ASSIR M. LEWINE, Respondent and Appellant, *v.* NATIONAL CITY BANK OF NEW YORK, Appellant and Respondent, Impleaded with Another.

Banks and banking — principal and agent — foreign exchange — evidence — interest — transmission during war by Russian government of sum of money to defendant " at disposal " of a Petrograd bank " by order " of one of its citizens — knowledge by defendant that Russian citizens were required to obtain credit in that way in order to make purchases in this country — payment of portion of money upon instructions of Russian bank leaving balance, on its nationalization after fall of Russian government, with defendant — citizen, at whose request credit was transmitted, entitled to balance — testimony to show what other banks did properly excluded — interest runs from date of demand.

1. During the late war the defendant received a letter from another New York banker, which it knew was frequently used by the Russian government through which to establish credit for its subjects in banks in this country, to the effect that it inclosed its check for a sum stated, " disposal Banque Commerce Azoff Don, Petrograd, by order Engineer A. Levine, Petrograd," upon which it cabled the Russian bank, which was one of its correspondents, that it had received the amount " order Engineer A. Levine " and credited it to the general account that existed between them. Thereafter a portion of the money was expended upon instructions from the Russian bank, leaving a balance on deposit with defendant at the time of the fall of the Russian government and nationalization of its banks. In an action to recover this balance, where it appears that the defendant was entirely familiar with the course of business in Russia during war time and knew that it was necessary for its citizens, who desired to purchase merchandise here, to obtain credit through its government and then buy and pay

for goods upon orders through a Russian bank named for that purpose, plaintiff is entitled to recover. The letter meant to the defendant that it should credit the amount stated to the order of the person named, paying it out only on his order transmitted through the Russian bank. The deposit, therefore, was his and the bank simply an agent to transmit his orders as to its disposal. He may, therefore, demand the balance.

2. Testimony offered to show what other banks did under like circumstances and as to whether there was a custom as to the disposition of funds made by banks under similar orders, was properly excluded. It did not answer the question whether banks and customers attached a particular meaning to particular words.

3. Interest runs from the date of the demand which was made by the commencement of the action. There is no sufficient proof of demand at an earlier time.

*Lewine* v. *National City Bank*, 222 App. Div. 74, affirmed.

(Argued May 8, 1928; decided May 29, 1928.)

CROSS-APPEALS from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered December 14, 1927, modifying and affirming as modified a judgment in favor of plaintiff entered upon a verdict directed by the court.

*Carl A. Mead, John A. Garver, Chauncey B. Garver* and *Harold Franklin Hopper* for National City Bank, appellant and respondent. The words " by order of " plaintiff do not mean " upon order of " plaintiff. (*Little* v. *Wilcox*, 119 Penn. St. 439; *Scott* v. *Parker*, 1 A. & E. [Q. B., N. S.] 809.) The trial court erred in excluding evidence of the meaning of words " by order of." (*Walls* v. *Bailey*, 49 N. Y. 464; *Shoyer* v. *Wright-Ginsberg Co.*, 240 N. Y. 223; *Merchants Bank* v. *State Bank*, 10 Wall. 604; *Nicoll* v. *Pittsvein Coal Co.*, 269 Fed. Rep. 968; *Humfrey* v. *Dale*, 7 E. & B. 266; *Mazukiewicz* v. *Hanover Nat. Bank*, 240 N. Y. 317; *Equitable Trust Co.* v. *Rochling*, 48 Sup. Ct. Rep. 58; *Ellis* v. *Albany City Fire Ins. Co.*, 50 N. Y. 402; *Robertson* v. *National S. S. Co.*, 139 N. Y. 416; *Lowenstein* v. *Lombard*, 164 N. Y. 324; *Peterson* v. *City of New York*, 194 N. Y. 437; *Pan-American Bank & Trust Co.* v. *National City Bank*, 6 Fed. Rep. [2d] 762.) Title

to the deposit was vested by plaintiff in the Azoff Don Bank. (*Wheeler* v. *Newbould*, 16 N. Y. 392; *Simson* v. *Satterlee*, 64 N. Y. 657; *Selleck* v. *Manhattan Fire Alarm Co.*, 121 N. Y. Supp. 587.)

*David L. Podell, Philip Adler* and *Irvine J. Shubert* for Assir M. Lewine, respondent and appellant. The City Bank knew or had reason to know that the Foreign Section sent the $200,000 for plaintiff's exclusive use. (*Fidelity & Deposit Co.* v. *Queens Co. Trust Co.*, 226 N. Y. 225; *Rochester & C. T. Road Co.* v. *Paviour*, 164 N. Y. 281; *Gerard* v. *McCormick*, 130 N. Y. 261; *Squire* v. *Ordemann*, 194 N. Y. 394; *Wagner Trading Co.* v. *P. B. Nat. Bank*, 228 N. Y. 37; *Anderson* v. *Kissam*, 35 Fed. Rep. 699; *Oklahoma State Bank* v. *Galion Iron Works*, 4 Fed. Rep. [2d] 337; *Hill Syrup Co.* v. *National City Bank*, 224 Pac. Rep. 578; *Cutler* v. *American Exchange Nat. Bank*, 113 N. Y. 593; *Drovers Nat. Bank* v. *O'Hare*, 119 Ill. 646; *American Exchange Bank* v. *Mining Co.*, 165 Ill. 103.) There was no error in the exclusion of the so-called banking custom. (*Hodell* v. *Tower's Stores*, 218 App. Div. 572; *Walls* v. *Bailey*, 49 N. Y. 464; *Farmers M. N. Bank* v. *Sprague*, 52 N. Y. 605; *Rawson* v. *Holland*, 59 N. Y. 611; *Rickerson* v. *Hartford Fire Ins. Co.*, 149 N. Y. 307; *Schlanger* v. *Heyman*, 185 App. Div. 599; *Albert* v. *State Bank*, 78 Misc. Rep. 56; *Irvin* v. *Williar*, 110 U. S. 499; *Hermann* v. *Niagara Fire Ins. Co.*, 100 N. Y. 411; *Higgins* v. *Moore*, 34 N. Y. 417; *Stoney* v. *Farmers Transport Co.*, 17 Hun, 579; *Griscom* v. *Bank*, 87 Tenn. 350; *Citizens Bank* v. *Chambers*, 129 Iowa, 414.) The Appellate Division erred in reducing the amount of interest. There was sufficient evidence of a demand in February, 1921. (*Shepherd* v. *City of New York*, 216 N. Y. 251; *Delehunty* v. *Central Bank*, 37 App. Div. 434; *Sokoloff* v. *National City Bank*, 130 Misc. Rep. 166; *Praeger* v. *N. J. Ins. Co.*, 245 N. Y. 1; *Faber* v. *New York*, 222 N. Y. 255.)

*William A. Onderdonk* and *Paul E. Mead* for American Exchange Irving Trust Company, *amicus curiæ.* The instructions accompanying the fund authorized the disposition thereof made by defendant. (*Hanlon* v. *Union Bank of Medina,* 247 N. Y. 389.)

*Hersey Egginton* for Central Union Trust Company, *amicus curiæ.* There was no express contract relation between plaintiff and the appellant National City Bank, such as banker and depositor, or otherwise. Any contract relation evidenced by the record was had by appellant bank exclusively with the Azoff Don Banque. (*Thatcher* v. *Bank of the State of New York,* 5 Sandf. 121; 1 Morse on Banks & Banking [5th ed.], 408, § 178; *Wilson* v. *First Nat. Bank,* 176 Mo. App. 73; *Jaselli* v. *Riggs National Bank,* 36 App. Cas. [D. C.] 159; *Heath* v. *New Bedford Safe Dep. Co.,* 184 Mass. 481; *Carthage Tissue Paper Mills* v. *Carthage,* 200 N. Y. 1; *New York* v. *N. Y. City R. Co.,* 193 N. Y. 543; *Woolsey* v. *Funke,* 121 N. Y. 87; *Wilson* v. *Randall,* 67 N. Y. 338; *Geneva Mineral Spring Co.* v. *Coursey,* 45 App. Div. 268; *Tanenbaum* v. *Levy,* 83 App. Div. 319.)

*William C. Cannon* and *Ralph M. Carson* for Guaranty Trust Company, *amicus curiæ.* The plaintiff having given his direction of payment in the manner in which he did and the defendant National City Bank having paid out the money for the account of the bank to whose account the money was by Lewine's orders credited, the plaintiff should not now be heard to contradict this disposition. (*Gibson* v. *Nat. Park Bank of New York,* 98 N. Y. 87.) Evidence of the usage and practice of New York and foreign banks in employing and interpreting these particular words was improperly excluded. (*Walls* v. *Bailey,* 49 N. Y. 464; *Smith* v. *Clews,* 114 N. Y. 190; *Newhall* v. *Appleton,* 114 N. Y. 140; *Atkinson* v. *Truesdell,* 127 N. Y. 230; *Shoyer* v. *Wright-Ginsberg Co.,* 240 N. Y. 223; *Humfrey* v. *Dale,* 7 E. & B. 266; *Farmers' Bank* v.

*Butchers' & Drovers' Bank,* 28 N. Y. 425; *Merchants' Nat. Bank* v. *Hall,* 83 N. Y. 338; *Hanlon* v. *Union Bank of Medina,* 247 N. Y. 389.)

*George Welwood Murray* and *Otey McClellan* for Equitable Trust Company, *amicus curiæ.*

ANDREWS, J. During the war ordinary commercial transactions between the United States and Russia were interrupted. No Russian citizen might at will convert rubles into dollars to be expended here. And what might be bought was limited to those things likely to aid in the conflict. If such purchases were to be made, permission of the government was required. Application was to a bureau of the Ministry of Finance — called here the Chancellery — for the creation of a dollar fund in New York. It stated the amount required, the bank where it was to be deposited, the kind of goods to be bought, and often, at least, the Russian bank through whom orders were to be transmitted. If approval came the applicant paid the requisite amount of rubles to the Chancellery. It, acting through its own agencies, usually Baring Brothers in London and Kidder, Peabody & Co. in New York, made the deposit in the designated bank here. Often this happened to be the defendant, the National City Bank. Then goods were bought and paid for upon orders received through the Russian bank named for that purpose. This seems to have served two purposes. The New York bank was not acquainted with the merchant in Russia nor did it know his signature. Yet under war conditions speed was essential, and it could easily verify the authenticity of orders given by a bank in Petrograd. Too, the Chancellery wished to keep track of purchasers, wished to see that its permit was not abused and that the dollars furnished by it at a low rate of exchange were not diverted to unauthorized uses. It could most easily do so by its control over its own local banks. But with all these limitations and all these

24

various agencies, the money when finally deposited in New York was the property of the merchant who had purchased it of the Chancellery. The credit was his. Such was the regular course of business and with it all the defendant was entirely familiar. It had been engaged in many such transactions.

Under these peculiar circumstances and with this peculiar knowledge the defendant on May 12, 1916, received a letter from Kidder, Peabody & Co. The plaintiff, it appears, was a Russian merchant. In 1915 he had applied to the Chancellery for permission to deposit $200,000 in the City Bank. He described the goods to be bought and stated that orders would be transmitted through the Azoff Don Bank of Petrograd as to the disposal of the deposit. This bank was a large institution with which he had done business and was a correspondent of the defendant. The Chancellery gave its approval and Lewine thereupon paid it 400,000 rubles. The next he heard was a letter from the Azoff Don Bank informing him that the Chancellery had deposited $200,000 to his credit with the defendant. Of these details of the transaction the City Bank had no notice.

The Kidder, Peabody letter stated that " at the cable request of Messrs. Baring Bros. & Co., Ltd., London, sent us ' in accordance instructions Foreign Section, Ministry Finance, Petrograd,' " they sent their check for $451,211.27, " to be applied as follows." Then came instructions as to the disposal of various amounts some to be held " at disposal " of named persons, without more, but most " at disposal " of some one " by order " of others named. Among the latter is $200,000 " disposal Banque Commerce Azoff Don, Petrograd, by order Engineer A. Levine, Petrograd." As has been said the Azoff Don Bank was a correspondent of the City Bank. A general account existed between them. Involving large transactions as it apparently. did, it must have fluctuated from day to day. At this particular time there was against the Azoff Don Bank a debit balance of

over $1,400,000. This seems of no great significance. What the City Bank did was to credit the $200,000 on this account and to cable and write the Azoff Don Bank that it had done so, saying that the amount had been received "by order Engineer A. Levine, Petrograd," from Kidder, Peabody & Co. at the request of Baring Bros. "sent in accordance with instructions Minister of Finance, Section Etrangers, Petrograd." But this the plaintiff did not know. He supposed the $200,000 stood to his credit with the defendant.

Then came some purchases. They were financed by letters of credit issued by the City Bank upon instructions from the Azoff Don Bank saying they were ordered by "A. M. Lewine" or by "A. Lewine," whom the defendant may or may not have understood to be the "Engineer A. Levine" referred to in the Kidder, Peabody letter. Probably it did, for they were to be in favor of Lewine's brother in Brooklyn, and with him the bank had communication. Discovery of the fact could hardly be avoided, but whether discovered or not it is not very material. In any event they totalled over $60,000. One hundred thousand dollars was also properly expended, leaving $39,945 of the $200,000 still unused.

It is unused, for the Russian government fell. No further importations of merchandise into Russia was possible. Lewine fled. The Azoff Don Bank was nationalized, at the time having a credit balance on the books of the defendant of $63,060.58. This sum, however, involved a credit of moneys not in fact belonging to the Russian bank. In reality it was a debtor in about $20,000. (*Friede* v. *National City Bank*, 222 App. Div. 644.)

The courts below have held that Lewine may recover this balance of $200,000 from the City Bank. Whether he may or not depends upon the instructions accompanying the receipt of the $200,000. If they mean that the City Bank is to credit that sum to the Azoff Don Bank

[248 N. Y. 365]    Opinion, per ANDREWS, J.    [May,

and that the reference to Lewine is merely to inform the latter as to the customer who is to receive credit on its books, then the defendant has done all it was required to do. If, on the contrary, it was to credit this deposit to Lewine, paying it out only on his order transmitted through the Azoff Don Bank as intermediary, then it should still have that balance in its possession. It should perhaps be said that if the second hypothesis is correct Lewine would be bound by any orders for payment given by the Azoff Don Bank.

We come back then to the meaning of the words used in the letter of instructions, "At the request of  *  *  * Baring Bros.  *  *  *  sent us ' in accordance instructions Foreign Section Ministry Finance '  *  *  *  we beg to enclose our check  *  *  *  to be applied as follows  *  *  *  $200,000 disposal Bank  *  *  * Azoff Don  *  *  *  by order Engineer A. Levine, Petrograd," and signed " Kidder, Peabody & Co." In fixing the proper interpretation two matters are to be considered. We have not a letter written in ordinary times and under ordinary conditions. The situation was unusual as the defendant knew. Nor are we informed of any general or even of any local custom, existing which places any particular meaning upon the words used. We must give the language its ordinary meaning in view of all the circumstances surrounding the transaction.

When the City Bank received this letter it knew certain things as did the writer. It knew, as has been said, the course of business in Russia during war time, and the rules as to the purchase and importation of merchandise. It knew that Baring Bros. and Kidder, Peabody & Co. were often used by the Chancellery in such transactions. It knew that the merchant, whoever he might be, on whose behalf the money was transmitted, wished something more than a mere credit with the Azoff Don Bank. That he might obtain by a deposit made in Petrograd. It knew no merchant might obtain dollars except to buy merchandise needed for war uses. It knew that funds

sent here were earmarked for that purpose. It knew the Chancellery watched their disbursements. It was told that these special funds had been sent by order of the Chancellery and knew they had been sent for the use of some merchant to whom they belonged. It knew that such merchant was to do the buying and that payments were to be made either on his order received directly or given through some Russian bank.

What then could the words " disposal Azoff Don Bank by order A. Levine " mean, or what could the City Bank have supposed they meant other than that $200,000, which belonged to Lewine was deposited with it. It was to be used by him to pay for goods purchased by him under his orders received through the Azoff Don Bank. It was at the " disposal " of the Azoff Don Bank for this purpose " by order " of Lewine. An indication that the City Bank so understood is the language of the telegram sent by it to Petrograd. " Received Kidder, Peabody * * * $200,000, order Engineer A. Levine." If it chose to receive a deposit under these conditions, it might not depart from them. Lewine may hold it to the letter of the contract.

Holding that this deposit was Lewine's and that the Azoff Don Bank was simply an agent to transmit his orders as to its disposal, he may demand the balance. To it the agent now dissolved never obtained title. That was and is still in Lewine.

It has been said that there is no proof before the court of any custom giving a peculiar or technical meaning to the words used in the letter of instruction. Had there been, the evidence would have been competent, and under ordinary circumstances might have been most material. Some efforts were made to give testimony supposed to bear on this subject. The testimony offered was properly excluded. What is to be shown is a custom supposed to be known to bankers and depositors and in the light of which their contracts are made. This is not shown by proof of what another bank did under like circumstances.

Nor whether there was a custom as to the disposition of funds made by banks under similar orders. What one or all chose to do is unimportant. It does not answer the question as to whether banks and customers attached a particular meaning to particular words.

The last important question on this appeal is as to the date from which interest should be calculated. It runs from the date of the demand. The Appellate Division says this was made by the commencement of the action. This is right. There is no sufficient proof of demand at an earlier time.

The judgment should be affirmed, without costs.

POUND, CRANE, KELLOGG and O'BRIEN, JJ., concur; CARDOZO, Ch. J., dissents; LEHMAN, J., not sitting.

Judgment affirmed.