The SWAN BREWERY COMPANY
LIMITED, Plaintiff,

v.

UNITED STATES TRUST COMPANY
OF NEW YORK, Defendant.

No. 90 Civ. 3521 (RWS).

United States District Court,
S.D. New York.

July 10, 1992.
Reargument Granted Dec. 2, 1992.

Andrews & Kurth by Maura Fecher Carlin, of counsel, New York City, for plaintiff.

Carter, Ledyard & Milburn by Beth D. Jacob, William H. Sloane, of counsel, New York City, for defendant.

## OPINION

SWEET, District Judge.

Plaintiff The Swan Brewery Company Limited ("Swan") brought this motion pursuant to Rules 15 and 38, Fed.R.Civ.P. for leave to amend and supplement its complaint filed on May 23, 1990 (the "Complaint") against defendant United States Trust Company of New York ("U.S. Trust"). Based on events taking place after May 23, 1990, the proposed amended and supplemental complaint (the "Amended and Supplemental Complaint") seeks to add claims for breach of trust and fiduciary duty, breach of agreement to hold funds in trust and conversion. As to those added claims, the Amended and Supplemental Complaint demands a jury trial; it also seeks punitive damages as to claims for breach of trust and fiduciary duty and conversion.

The motion to amend and supplement the Complaint was filed on March 27, 1992. Oral argument was heard on April 15, 1992, at which time Swan's motion was granted to the extent of adding its the causes of action. The court reserved judgment as to the proposed jury trial demand and claim for punitive damages, thus effectively rendering the motion under consideration a motion to strike the jury demand and claim for punitive damages. The Amended and Supplemental Complaint was filed on April 16, 1992. The motion was considered fully submitted as of April 17, 1992. Based on the considerations set forth below, the motion to strike the jury demand is granted, and the motion to strike the demand for punitive damages is denied.

### Background

The following states the relevant facts, as stated in the pleadings and the submissions of the parties, for purposes of this motion.

### The Complaint

The action arose out of an indenture with Swan dated as of December 15, 1983 (the "Indenture") under which U.S. Trust was trustee. Pursuant to the Indenture, Swan issued $135,000,000 in principal amount of 14⅞% Limited Subordinated Debentures due December 15, 1998 (the "Debentures").

Section 7.07 of the Indenture provides, in pertinent part, that:

The Company [Swan] shall reimburse the Trustee upon request for all reasonable disbursements, expenses and advances incurred or made by it. Such expenses may include the reasonable compensation, disbursements and expenses of the Trustee's agents and counsel.

However, § 7.07 further provides that "[t]he Company need not reimburse the Trustee for any expense or indemnify it against any loss or liability incurred by it through its negligence or bad faith."

By letter dated February 16, 1990, U.S. Trust demanded reimbursement from Swan of $141,456.75 to which it claimed it was entitled for in fees and expenses incurred as trustee under the Indenture (the "February Bill"). By Notice of Default dated March 14, 1990, U.S. Trust advised Swan that if it did not pay this amount, U.S. Trust would declare an Event of Default under the Indenture, potentially accelerating the entire principal amount of indebtedness remaining on the Debentures. Swan paid the sum claimed in the February Bill under protest.

U.S. Trust sent another statement on April 19, 1990, claiming fees and expenses in the amount of $171,680.56 (the "April Bill"). On May 23, 1990, Swan filed the Complaint, alleging claims for breach of contract, money had and received in the amounts paid on the February Bill, and seeking an injunction against further collection efforts with respect to the April Bill, a declaratory judgment that U.S. Trust was not entitled to reimbursement of the amounts claimed in the April Bill and a declaratory judgment that U.S. Trust was not entitled under the Indenture to any of the fees and expenses it allegedly had incurred or would incur in defending the instant lawsuit. No timely demand for a jury trial was made, and punitive damages were not requested.

*Events Subsequent to May 23, 1990: the Amended and Supplemental Complaint*

The Amended and Supplemental Complaint alleges that on May 23, U.S. Trust sent a Notice of Default relating to the April Bill, stating that it would accelerate the outstanding indebtedness on the De-

bentures. In response, Swan remitted $50,000, reserving the right to claim a refund. From May 23, 1990 to December of 1990, U.S. Trust sent eight additional bills for payment of purported fees and expenses related to this litigation, in the amount of $304,125.19. This figure did not include the amounts claimed in the February and April Bills. Swan contests U.S. Trust's entitlement to these fees, as well as those previously claimed.

On November 28, 1990, Swan wired $130,562,906 to U.S. Trust with instructions to satisfy and discharge all of the outstanding Debentures. This sum included an alleged $969,796.62 in excess of the amount necessary to pay the Debentures in full (the "Overpayment"). By letter of the same date (the "November 28 Letter"), Swan advised U.S. Trust that the sole purpose of the transfer and deposit was to fulfill Swan's obligation to discharge the Debentures and that Swan did not thereby authorized the deduction of any amounts owing to the trustee. The November 28 Letter further stated that:

[s]ubject to the payment of the Satisfaction Amount [calculated to be $129,683,-109.38] as authorized above, the balance of the Payment Amount [the $130,652,-906] is to be held in trust for Swan and invested in an interest-bearing account pending its return to Swan and is to be promptly returned to Swan, with all interest and other income earned thereon, upon demand by Swan.

Swan Ex. C.

By letter dated November 30, 1990, U.S. Trust notified Swan that it was paying out the principal and interest due on the Debentures, had invested the balance and was reserving the right to apply the Overpayment to its claimed fees. *See* U.S. Trust Ex. A. U.S. Trust maintains that it never accepted the Overpayment in trust for Swan. By letter of December 28, 1990, U.S. Trust sent Swan an accounting of its fees and expenses that remained due in the amount of $425,805.75. *See* U.S. Trust Ex. A. By letter of August 15, 1991, Swan demanded the return of a portion of the Overpayment, stating that U.S. Trust could

retain $460,000 (the amount Swan estimated to be the outstanding balance of U.S. Trust's purported fees and expenses billed to Swan) in trust. *See* Swan Ex. D. By letter dated September 27, 1991, U.S. Trust advised Swan that it would return all but $443,391.71, which it would retain to satisfy the balance of its claimed fees and expenses. *See* Swan Ex. E.

On September 30, 1991, Swan moved by order to show cause for a temporary restraining order and preliminary injunction to prevent U.S. Trust from applying any portion of the Overpayment to its purported fees and expenses. The temporary restraining order was denied on October 1, 1991, and Swan withdrew its application for a preliminary injunction.

Following a series of failed settlement negotiations, Swan moved to file the Amended and Supplemental Complaint on March 27, 1991.

*Discussion*

### 1. Demand for Jury Trial

#### A. *Waiver of Right to Jury Trial*

■ Under Federal Rule of Civil Procedure 38, failure to make a jury demand within 10 days after the close of the original pleadings constitutes a waiver of a party's right to a jury trial as to all issues relating to the "general area of dispute." Fed.R.Civ.P. 38(b), (d); *Anaconda–Ericsson v. American Dist. Tel. Co.*, 101 F.R.D. 13, 15 (E.D.N.Y.1984). Nevertheless, to the extent that an amended or supplemental complaint raises new issues of fact, the right to demand a jury trial is revived. *Catapano v. Western Airlines, Inc.*, 105 F.R.D. 621, 623 (E.D.N.Y.1985); *Anaconda–Ericsson*, 101 F.R.D. at 15. An amended or supplemental complaint does not, however, revive the right to demand a jury trial either as to factual issues already framed in the original pleadings, *Lanza v. Drexel & Co.*, 479 F.2d 1277 (2d Cir.1973); *Bank of India v. Handloom House (India) Ltd.*, 629 F.Supp. 281, 281 (S.D.N.Y.1986), or as to new legal theories based on facts previously pleaded. *Rosen v. Dick*, 639 F.2d 82, 94–96 (2d Cir.1980). Therefore, new issues of fact, which raise the possibility of a jury trial, must be distinguished

from new issues of law. *Id.* at 94; *Trixler Brokerage Co. v. Ralston Purina Co.*, 505 F.2d 1045, 1050 (9th Cir.1974).

*Lanza v. Drexel & Co.*, 479 F.2d 1277 (2d Cir.1973), illustrates the distinction. In that case, the original complaint, which contained no demand for a jury trial, alleged that the defendant had violated § 10(b) of the Securities and Exchange Act of 1934 and Rule 10b–5. The defendant's answer did not demand a jury trial. Subsequently, the plaintiffs twice amended the complaint, adding claims that a certain prospectus was false on the date of issuance and that the defendant's conduct violated § 17(a) of the Securities and Exchange Act of 1933. The defendant's timely requests for a jury trial following each of the amendments were denied. *Id.* at 1310.

The Second Circuit affirmed the denial of the jury trial requests, concluding that:

> The amendments did not raise new issues within the meaning of Rule 38 such as would entitle Kircher to demand a jury trial as of right. The case involved, and the original complaint raised, *one basic issue:* Whether plaintiffs were fraudulently induced to exchange their Victor stock. Kircher's failure to demand a jury trial waived his right as to all issues relating to this *general area of dispute.* The amendment added no new issues: the same conduct and the same allegedly false documents constituted the basis for any claim under Rule 10b–5, Section 17(a), or common law fraud.... Kircher had been put on notice of the underlying facts and basic legal theory—fraud— upon which plaintiffs sought relief, and the character of the suit was in no way changed by the amendments.

*Id.* (emphasis added).

Conceding that it has waived its right to jury trial as to any claims based on the factual issues raised in the Complaint, Swan contends nevertheless that the three claims for which it has made a timely demand for a jury trial in the Amended and Supplemental Complaint—breach of trust, breach of agreement to hold funds in trust and conversion—raise new factual issues

and thus revive its right to demand a jury trial as to these claims. Swan is correct only as to the claims based on breach of trust.

Articulation of the "general area of dispute" framed in the Complaint is not complicated: the factual issue central to each of the claims in that pleading is whether U.S. Trust is entitled under the Indenture to its claimed fees and expenses. To prove that U.S. Trust converted these funds, Swan must establish (1) that it had legal ownership or immediate superior right of possession to the funds at issue and (2) that it made a demand for the return of the funds, lawfully possessed by U.S. Trust, and that U.S. Trust refused this request. *Republic of Liberia v. Bickford*, 787 F.Supp. 397, 402 (S.D.N.Y.1992) (citing *Kahn v. Crames*, 92 A.D.2d 634, 459 N.Y.S.2d 941, 943 (1983); *Heneghan v. Cap-a-Radiator Shops*, 132 Misc.2d 936, 506 N.Y.S.2d 132, 134 (1986)).

■ The "basic [factual] issue" thus posed by this claim is precisely whether U.S. Trust is entitled to the moneys retained by it out of the Overpayment. The mere fact that this claim relates to facts occurring subsequent to the Complaint does not alter this conclusion because the Complaint is "sufficiently broad to be fairly construed as including" issues relating to these new facts. *See Lanza*, 479 F.2d at 1310–11. Not only was a portion of the money retained attributable to the sums claimed in the April Bill, about which the original Complaint sought declaratory judgment, but the Complaint also encompassed future claims by U.S. Trust for fees and expenses because it sought a declaration that U.S. Trust is not entitled to "any purported fees or expenses which it may incur *in defending the instant lawsuit*." Complaint at 12, ¶ (c) (emphasis added).

■ The claims for breach of trust and breach of trust agreement do raise factual issues not framed in the Complaint as to whether a trust existed, and, if so, as to whether U.S. Trust breached the terms of that trust when it retained a portion of the

Overpayment in satisfaction of its claimed fees and expenses. Having thus determined that the Amended and Supplemental Complaint revives U.S. Trusts right to demand a jury trial to this extent, it must now be determined whether Swan is entitled to a jury on these claims.

B. *Right to Jury Trial on Claims for Breach of Trust and Breach of Agreement to Hold Funds in Trust*

■ Under the Seventh Amendment, "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of a trial by jury shall be preserved." U.S. Const. amend. VII. The Supreme Court has consistently interpreted the phrase "Suits at common law" to refer to " 'suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered.' " *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41, 109 S.Ct. 2782, 2789, 106 L.Ed.2d 26 (1989) (quoting *Parsons v. Bedford*, 3 Pet. 433, 447, 7 L.Ed. 732 (1830); emphasis in original). To determine whether a particular action will resolve legal rights, courts look first to the nature of the issues involved by comparing the action to the 18th-century action brought in the courts of England prior to the merger of the courts of law and equity, and second to the nature of the remedy sought. *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 565, 110 S.Ct. 1339, 1345, 108 L.Ed.2d 519 (1990) (hereinafter *"Local 391"*) (quoting *Granfinanciera*, 492 U.S. at 41, 109 S.Ct. at 2789). According to the Supreme Court's most recent pronouncement on the issue, "[t]he second inquiry is the more important." *Id.*

■ Consideration of the first factor militates against finding that legal rights are involved in these claims. Actions by a beneficiary against a trustee based on breach of fiduciary duty, such as actions for breach of trust,[1] were within the exclu-

---

1. Because the alleged trust in this action is alleged to derive from an agreement, it is unclear

what difference is to be found between Swan's claims for breach of trust and breach of trust

sive jurisdiction of the 18th-century courts of equity. *See id.* at 566, 110 S.Ct. at 1345; 3 *Scott on Trusts* § 197, at 1625–26 (3d ed. 1967) ("Trusts are, and have been since they were first enforced, within the peculiar province of courts of equity.").

The second factor is somewhat less straightforward. Swan seeks relief on these claims in the form of money damages, which are generally considered legal in nature. *Local 391* at 570, 110 S.Ct. at 1347.[2] However, an award of monetary relief is not necessarily "legal" relief. *Id.* Actions for damages may be characterized as equitable in nature where (1) the damages sought are in the nature of restitution, as in actions for disgorgement of improper profits or money wrongfully withheld and (2) a monetary award is " 'incidental to or intertwined with injunctive relief.' " *Id.* at 571, 110 S.Ct. at 1348 (quoting *Tull v. United States*, 481 U.S. 412, 424, 107 S.Ct. 1831, 1839, 95 L.Ed.2d 365 (1987)).

While Swan makes much of the fact that the damages sought here lack the second attribute of equitable relief articulated in *Local 391*, it ignores the fact that they are in the nature of restitution. Specifically, Swan seeks the return of the retained portion of the Overpayment, allegedly wrongfully held by U.S. Trust.

Swan makes the further argument, based on § 198(1) of the Restatement (Second) of Trusts, that these claims are legal in nature because the only question to be determined is whether U.S. Trust failed to perform a ministerial act expressly mandated by the purported trust agreement. Section 198(1) provides that:

> if the trustee is under a duty to pay money immediately and unconditionally to the beneficiary, the beneficiary can maintain an action at law against the trustee to enforce payment.

A court within this district has given § 198(1) the following interpretation:

> It seems to us that the word "unconditionally" in the above quoted text was intended to mean without the intervention of equity.... Each of the illustrations [following the text of § 198] presents a situation in which there is no possible need for the intervention of equity, the only question being whether the trustee failed to perform a ministerial act expressly mandated by the trust instrument. The court's function in such a case is no different from that performed in the interpretation of a contract, or any other document.

*Nobile v. Pension Comm. of Pension Plan for Employees of New Rochelle Hospital*, 611 F.Supp. 725, 729 (S.D.N.Y.1985); *see also* 3 *Scott on Trusts* § 198, at 1631. The *Nobile* court held, nevertheless, that the facts of the case before it did not satisfy these conditions because it presented the "traditionally equitable question" of whether the trustee had breached its fiduciary duty. Pending resolution of that equitable question, the trustee was under no duty to pay. *Nobile*, 611 F.Supp. at 729.

As in *Nobile*, there is a need for the "intervention of equity" here. Although the November 28 Letter does direct what would seem to be the type of "ministerial act" contemplated by § 198(1), the existence of the trust as to these funds is disputed by U.S. Trust. Thus, the sole question is *not* whether U.S. Trust "failed to perform a ministerial act expressly mandated by the trust instrument." Rather, equity must intervene to determine whether in fact a trust existed and, if so, what the terms of that trust were. The motion to strike Swan's demand for a jury trial as to these claims is therefore granted.

### 2. Request for Punitive Damages

Because I find that Swan's request for punitive damages will not prejudice U.S.

---

agreement. Lacking elucidation from Swan as to any elemental differences, these claims shall be treated together for purposes of determining the nature of these claims and the remedies sought. *Cf. also* 3 *Scott on Trusts* § 197.2, at 1628–29 (trust beneficiary not able to maintain breach of contract action against trustee).

**2.** Although damages for a trustee's breach of trust were, in the 18th century, available only in the courts of equity, this fact is not dispositive in characterizing the nature of the remedy sought. *Local 391*, 494 U.S. at 571 n. 8, 110 S.Ct. at 1348.

Trust, the motion to strike the request is denied.

*Conclusion*

For the foregoing reasons, the motion to strike the jury trial demand is granted. The motion to strike the punitive damages claim is denied.

It is so ordered.