The SWAN BREWERY COMPANY LIMITED, Plaintiff,

v.

UNITED STATES TRUST COMPANY OF NEW YORK, Defendant.

No. 90 Civ. 3521 (RWS).

United States District Court, S.D. New York.

Sept. 14, 1993.

 

Andrews & Kurth, New York City, for plaintiff (Lynne M. Fischman Uniman, Maura Fecher Carlin, and James D. Higgason, Jr., of counsel).

Carter, Ledyard & Milburn, New York City, for defendant (Beth D. Jacob and John Crabb, Jr., of counsel).

## OPINION

SWEET, District Judge.

Plaintiff The Swan Brewery ("Swan") has moved for partial summary judgment pursuant to Rule 56, Fed.R.Civ.P., on its seventh cause of action for conversion against United States Trust Company of New York ("U.S. Trust"). For the reasons set forth below, the motion is denied.

The parties and facts relevant to this motion have been described fully in prior opinions. *See Swan Brewery Co. v. United States Trust Co.*, 143 F.R.D. 36 (S.D.N.Y.), *on reconsideration*, 145 F.R.D. 40 (S.D.N.Y. 1992). Familiarity with these opinions is assumed.

### Background

This action arose out of an indenture with Swan dated as of December 15, 1983 (the "Indenture") under which U.S. Trust was trustee. Swan is a corporation organized under the laws of the Commonwealth of Australia with its principal place of business in Canning Vale, Western Australia. U.S. Trust is a trust company organized under the laws of New York.

Pursuant to the Indenture, Swan issued $135,000,000 in principal amount of 14⅞% Limited Subordinated Debentures due December 15, 1998 (the "Debentures"). Section 7.07 of the Indenture provides, in pertinent part, that:

> The Company [Swan] shall reimburse the Trustee upon request for all reasonable disbursements, expenses and advances incurred or made by it. Such expenses may include the reasonable compensation, disbursements and expenses of the Trustee's agents and counsel.

However, § 7.07 further provides that "[t]he Company need not reimburse the Trustee for any expense or indemnify it against any loss or liability incurred by it through its negligence or bad faith."

By letter dated February 16, 1990, U.S. Trust demanded reimbursement from Swan of $141,456.75 to which it claimed it was entitled for in fees and expenses incurred as trustee under the Indenture (the "February

Bill"). By Notice of Default dated March 14, 1990, U.S. Trust advised Swan that if it did not pay this amount, U.S. Trust would declare an Event of Default under the Indenture, potentially accelerating the entire principal amount of indebtedness remaining on the Debentures. Swan paid the sum claimed in the February Bill under protest.

U.S. Trust sent another statement on April 19, 1990, claiming fees and expenses in the amount of $171,680.56 (the "April Bill"). On May 23, 1990, Swan filed a complaint against U.S. Trust, alleging claims for breach of contract, and for money had and received in the amounts paid on the February Bill, and seeking an injunction against further collection efforts with respect to the April Bill, a declaratory judgment that U.S. Trust was not entitled to reimbursement of the amounts claimed in the April Bill, and a declaratory judgment that U.S. Trust was not entitled under the Indenture to any of the fees and expenses it allegedly had incurred or would incur in defending the instant lawsuit.

On May 23, 1990, U.S. Trust sent a Notice of Default relating to the April Bill, stating that it would accelerate the outstanding indebtedness on the Debentures. In response, Swan remitted $50,000, reserving the right to claim a refund. From May 23, 1990 to December of 1990, U.S. Trust sent eight additional bills for payment of purported fees and expenses related to this litigation, in the amount of $304,125.19. This figure did not include the amounts claimed in the February and April Bills. Swan contests U.S. Trust's entitlement to these fees, as well as those previously claimed.

On November 28, 1990, Swan wired $130,-562,906 to U.S. Trust with instructions to satisfy and discharge all of the outstanding Debentures. This sum included an alleged $969,796.62 in excess of the amount necessary to pay the Debentures in full (the "Overpayment"). By letter of the same date (the "November 28 Letter"), Swan advised U.S. Trust that the sole purpose of the transfer and deposit was to fulfill Swan's obligation to discharge the Debentures and that Swan did not thereby authorize the deduction of any amounts owing to the trustee. The November 28 Letter further stated that:

[s]ubject to the payment of the Satisfaction Amount [calculated to be $129,683,109.38] as authorized above, the balance of the Payment Amount [the $130,652,906] is to be held in trust for Swan and invested in an interest-bearing account pending its return to Swan and is to be promptly returned to Swan, with all interest and other income earned thereon, upon demand by Swan.

By letter dated November 30, 1990 (the "November 30 Letter"), U.S. Trust notified Swan that it was paying out the principal and interest due on the Debentures, had invested the balance, and was reserving the right to apply the Overpayment to its claimed fees. U.S. Trust maintains that it never accepted the Overpayment in trust for Swan. By letter of December 28, 1990, U.S. Trust sent Swan an accounting of its fees and expenses that remained due in the amount of $425,-805.75. By letter of August 15, 1991, Swan demanded the return of a portion of the Overpayment, stating that U.S. Trust could retain $460,000 (the amount Swan estimated to be the outstanding balance of U.S. Trust's purported fees and expenses billed to Swan) in trust. By letter dated September 27, 1991, U.S. Trust advised Swan that it would return all but $443,391.71, which it would retain to satisfy the balance of its claimed fees and expenses.

On September 30, 1991, Swan moved by order to show cause for a temporary restraining order and preliminary injunction to prevent U.S. Trust from applying any portion of the Overpayment to its purported fees and expenses. The temporary restraining order was denied on October 1, 1991, and Swan withdrew its application for a preliminary injunction.

Swan moved to amend its complaint on March 26, 1992, in order to add new causes of action and a demand for a jury trial. The proposed amended and supplemental complaint added claims for breach of trust and fiduciary duty, breach of agreement of trust, and conversion. It also sought punitive damages for the claims of breach of trust and fiduciary duty and of conversion in addition to the new demand for a jury trial.

Swan's motion to amend and supplement the Complaint was granted on April 15, 1992, to the extent of permitting Swan to add its new causes of action, and Swan filed the Amended Complaint the next day, on April 16. U.S. Trust then moved to strike the demands for a jury and for punitive damages. The motion to strike the jury demand was granted and the motion to strike the demand for punitive damages was denied. *Swan Brewery Co. v. United States Trust Co.,* 143 F.R.D. 36 (S.D.N.Y.), *on reconsideration,* 145 F.R.D. 40 (S.D.N.Y.1992). Swan made a motion to reargue the issue of the jury demand. This motion was granted, but upon reargument U.S. Trust's motion to strike Swan's jury demand was again granted. *Swan Brewery Co. v. United States Trust Co.,* 145 F.R.D. 40 (S.D.N.Y.1992).

Argument was heard on Swan's present motion for partial summary judgment on September 8, 1993, and the motion was considered fully submitted as of that date.

## Discussion

### I. Standard for Summary Judgment

A motion for summary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Silver v. City Univ.,* 947 F.2d 1021, 1022 (2d Cir.1991). The moving party bears the burden of proving that no genuine issue of material fact exists. *Brady v. Town of Colchester,* 863 F.2d 205, 210 (2d Cir.1988); *Pittston Warehouse Corp. v. American Motorists Ins. Co.,* 715 F.Supp. 1221, 1224 (S.D.N.Y.1989).

The Second Circuit has repeatedly noted that "[as a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester,* 863 F.2d 205, 210 (2d Cir.1988); *see also United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Cartier v. Lussier,* 955 F.2d 841, 845 (2d Cir.1992); *Burtnieks v. City of New York,* 716 F.2d 982, 983–84 (2d Cir.1983); *Mayer v. Morgan Stanley*

*& Co.,* 703 F.Supp. 249, 251 (S.D.N.Y.1988). In particular, if it is necessary to resolve inferences regarding intent, summary judgment is not appropriate. *Patrick v. Le Fevre,* 745 F.2d 153, 159 (2d Cir.1984); *Friedman v. Meyers,* 482 F.2d 435, 439 (2d Cir.1973); *Van den Hengel v. Goldman,* 1988 WL 103379, at *2, 1988 U.S.Dist. LEXIS 10565, at *7 (S.D.N.Y. September 22, 1988) (denying plaintiff's motion for summary judgment on conversion claim because there were disputed facts regarding intent).

### II. The Conversion Claim

The factual issue central to this claim is whether U.S. Trust is entitled to retain a portion of the Overpayment in satisfaction of its claimed fees and expenses under the Indenture. To prove that U.S. Trust converted these funds, Swan must establish (1) that it had legal ownership or an immediate superior right of possession to the funds at issue and (2) that it made a demand for the return of the funds, lawfully possessed by U.S. Trust, and that U.S. Trust refused this request. *Swan Brewery Co. v. United States Trust Co.,* 143 F.R.D. 36, 40 (S.D.N.Y.), *on reconsideration,* 145 F.R.D. 40 (S.D.N.Y. 1992). *See also It's Entertainment, Div. of I.S. Enters., Inc. v. Choice Entertainment, Inc.,* 1991 WL 285615, at *10, 1991 U.S.Dist. LEXIS 18347, at *28–*29 (S.D.N.Y. Dec. 30, 1991); *Pittston Warehouse Corp. v. American Motorists Ins. Co.,* 715 F.Supp. 1221, 1225 (S.D.N.Y.1989); *Massive Paper Mills v. Two–Ten Corp.,* 669 F.Supp. 94, 95 (S.D.N.Y. 1987).

Swan argues that U.S. Trust held the Overpayment in trust for them in a "special" account. Pl's. Mem. at 9. Bank deposits can be classified as either "general" or "special." When funds are deposited into a "special" account, "the bank becomes a bailee of the depositor, the title of the thing deposited remaining with the latter." *Peoples Westchester Sav. Bank v. Federal Deposit Ins. Corp.,* 961 F.2d 327, 330 (2d Cir.1992) (quoting *Marine Bank v. Fulton Bank,* 69 U.S. (2 Wall.) 252, 256, 17 L.Ed. 785 (1864)).

U.S. Trust argues to the contrary that the Overpayment account was a "gener-

al" account, or that, at the very least, the issue of whether the Overpayment account was "general" or "special" is a material factual matter in dispute. Def's. Mem. at 11–16. When funds are deposited into "general account," "the depositor, for his own convenience, parts with the title to his money, and loans it to the banker." *Peoples Westchester Sav. Bank,* 961 F.2d at 330 (quoting *Marine Bank,* 69 U.S. (2 Wall.), at 256) *see also Miller v. Wells Fargo Bank Int'l Corp.,* 540 F.2d 548, 560 (2d Cir.1976) ("Money deposited in a general account . . . does not remain the property of the depositor. Upon deposit . . . the money deposited becomes the property of the depositary bank. . . ."); *Geler v. National Westminster Bank USA,* 770 F.Supp. 210, 215 (S.D.N.Y.1991) ("a bank receiving a general deposit is not a bailee of the deposited funds, but merely owes an ordinary debt to the depositor") (citations omitted).

■ This distinction is important because Swan alleges that U.S. Trust has set off a portion of the Overpayment against Swan's alleged debt relating to U.S. Trust's functioning as trustee of the Indenture. A depository institution may apply the funds in a general account to set off debts owed to it by a depositor. It may not do so with funds in a special account. *See HBL Indus., Div. of Houston Barge Line, Inc. v. Chase Manhattan Bank (Nat'l. Ass'n),* 45 B.R. 865, 868 (S.D.N.Y.1985). For this reason, and because money paid into a general account is not sufficiently specific and identifiable, a claim that a depository institution has retained funds deposited in a general account will not support an action for conversion. *Geler v. National Westminster Bank USA,* 770 F.Supp. 210, 215 (S.D.N.Y.1991); *Massive Paper Mills v. Two–Ten Corp.,* 669 F.Supp. 94, 96 (S.D.N.Y.1987) (conversion claim could not be maintained for funds deposited into corporate general account).

To have any chance of succeeding on this motion, therefore, Swan must demonstrate

that there is no issue of material fact regarding whether the Overpayment was maintained in a special or general account. If U.S. Trust held the Overpayment in a general account, they were entitled to set the funds in this account off against debts legitimately owed to it. In such case, "the basic [and still unresolved] factual issue . . . posed by this claim is still whether U.S. Trust is entitled to the moneys retained by it out of the Overpayment." *Swan Brewery Co. v. United States Trust Co.,* 145 F.R.D. 40, 45 (S.D.N.Y.1992).[1]

■ Swan's burden of demonstrating on this motion that the Overpayment has been maintained in a special account is a difficult one. Whether an account is general or specific depends upon the mutual intent of the parties. *Peoples Westchester Sav. Bank v. Federal Deposit Ins. Corp.,* 961 F.2d 327, 332 (2d Cir.1992) (Altimari, J., dissenting); *In re Kountze Bros.,* 103 F.2d 785, 789 (2d Cir.), *cert. denied,* 308 U.S. 586, 60 S.Ct. 110, 84 L.Ed. 491 (1939); *Gray v. First Nat'l Bank & Trust Co.,* 263 N.Y. 479, 485, 189 N.E. 557 (1934) (whether deposit is general or special "depends, as in the case of any other contract, upon the intent of the parties"); *Noah's Ark Auto Accessories, Inc. v. First Nat'l Bank,* 64 Misc.2d 944, 316 N.Y.S.2d 663, 665 (Sup.Ct.1970), *aff'd,* 37 A.D.2d 692, 323 N.Y.S.2d 408 (1971) (whether account is general or special depends on mutual intention and understanding of the parties). As discussed above, the need to resolve inferences regarding intent often precludes summary judgment. *Patrick v. Le Fevre,* 745 F.2d 153, 159 (2d Cir.1984); *Friedman v. Meyers,* 482 F.2d 435, 439 (2d Cir.1973); *Van den Hengel v. Goldman,* 1988 WL 103379, at *2, 1988 U.S.Dist. LEXIS 10565, at *7 (S.D.N.Y. September 22, 1988).

■ Swan's burden on this motion is made more difficult by the presumption under New York law that deposits are general rather than specific. *See Peoples Westchester Sav.*

---

1. Even if Swan establishes that the Overpayment was maintained in a special account, there is some authority that a depository institution may set off the funds in a special trust account against debts that arise solely out of the administration of the trust by the depository institution as trust-

ee. *See, e.g., Kates v. Marine Midland Bank, N.A.,* 143 Misc.2d 721, 541 N.Y.S.2d 925 (Sup.Ct. 1989). Because Swan has failed to carry its burden to overcome the presumption that the Overpayment was maintained in a general account, we need not consider this issue here.

*Bank v. Federal Deposit Ins. Corp.*, 961 F.2d 327, 332 (2d Cir.1992) (party "failed to rebut the strong presumption" that account intended to be general); *In re Applied Logic Corp.*, 576 F.2d 952, 961 (2d Cir.1978) (declining to find that account was special, rather than general, because of lack of high level of "convincing evidence" to that effect); *In re Kountze Bros.*, 103 F.2d 785, 790 (2d Cir.), *cert. denied*, 308 U.S. 586, 60 S.Ct. 110, 84 L.Ed. 491 (1939); *Noah's Ark Auto Accessories, Inc. v. First Nat'l Bank*, 64 Misc.2d 944, 316 N.Y.S.2d 663, 665 (Sup.Ct.1970), *aff'd*, 37 A.D.2d 692, 323 N.Y.S.2d 408 (1971) ("New York Law relating to special accounts is fairly well summarized as follows ... a deposit is presumed to be general rather than special and the burden devolves on the party who claims that the deposit is a special one to show that it was received by the bank with the express or clearly implied agreement that it should be kept separate from the general funds of the bank....")

■ Courts look to all of the circumstances surrounding the creation of an account to ascertain whether the depositor and the depository institution mutually intended the account to be special or general. In *Peoples Westchester Savings Bank v. Federal Deposit Ins. Corp.*, 961 F.2d 327 (2d Cir. 1992), the Second Circuit looked to the documents generated in opening an "interest on lawyer account" and testimony of the depository institution's officials for evidence that the depository institution assumed a duty to maintain a special account, concluding that "there was no explicit agreement between the bank and [the depositor]." *Peoples Westchester Savings Bank v. Federal Deposit Ins. Corp.*, 961 F.2d 327, 331 (2d Cir.1992).

*Peoples Westchester* refers to *Keyes v. Paducah & I.R. Co.*, 61 F.2d 611 (6th Cir.1932), as the case that sets out the "guiding rule" for making the determination of whether an account is general or specific. *Peoples Westchester*, 961 F.2d at 330. In *Keyes*, the court considered whether funds deposited with a bank pursuant to a court order as security for the issuance of a temporary injunction were held in a special or general account. The plaintiff had deposited a draft with the bank without indicating whether the account

should be general or special. When the draft cleared, the bank sent a letter to the plaintiff informing him that it was holding the deposit in the form of a cashier's check. *Keyes v. Paducah & I.R. Co.*, 61 F.2d 611, 612 (6th Cir.1932). The court found that this letter informed the plaintiff that his funds were not being held in a special account. In finding that the account was a general account, the court noted that the plaintiff did not protest the bank's arrangements immediately upon receipt of the letter. *Id.* at 613.

■ The fact that funds are deposited for a specific purpose is not determinative of the question of whether an account is general or specific. *In re Kountze Bros.*, 27 F.Supp. 1002, 1003–04 (S.D.N.Y.1938), *aff'd*, 103 F.2d 785 (2d Cir.), *cert. denied*, 308 U.S. 586, 60 S.Ct. 110, 84 L.Ed. 491 (1939), held that an account was a general account although funds were deposited for the specific purpose of the payment of bonds issued by the depositors.

In *Noah's Ark Auto Accessories, Inc. v. First Nat'l Bank*, 316 N.Y.S.2d 663 (Sup.Ct. 1970), *aff'd*, 37 A.D.2d 692, 323 N.Y.S.2d 408 (1971), a bank set off against debts of the plaintiff funds in the plaintiff's account. The plaintiff claimed that the set off was improper because the account in question was a special account which had been opened solely for the purpose of transmitting funds from the plaintiff to its creditor. The court found that the defendant had improperly set off funds from a special account, but only because the defendant bank had treated the account as a special account for several months in accordance with the plaintiff's instructions before the set off. The court found this indicated that "[c]learly, both parties had reached an agreement that this was to be a special account." *Noah's Ark Auto Accessories, Inc. v. First National Bank*, 316 N.Y.S.2d 663, 666 (Sup.Ct.1970), *aff'd*, 37 A.D.2d 692, 323 N.Y.S.2d 408 (1971).

The evidence that Swan has offered in support of its present motion is insufficient to overcome the presumption that the Overpayment was held in a general account. Although Swan's November 28, 1990 letter indicated Swan's desire to create a special account, U.S. Trust's return letter on Novem-

ber 30, 1990 clearly indicated its intention to maintain the funds in a general account. In a letter dated January 15, 1991, U.S. Trust again indicated to Swan that it was reserving its right to set the funds in the Overpayment account off against Swan's debts. On August 15, 1991, Swan reiterated its understanding that the Overpayment account was being held in trust. On August 30, 1991, U.S. Trust again made it clear that it believed it was entitled to offset the Overpayment account against Swan's debts. Swan accepted a portion of the Overpayment account that U.S. Trust wired to it on September 27, 1991, although in the accompanying letter U.S. Trust indicated that it would apply part of the Overpayment account in full satisfaction of U.S. Trust's outstanding fees and expenses. This correspondence does not indicate that "[c]learly, both parties had reached an agreement that this was to be a special account." *Noah's Ark Auto Accessories, Inc. v. First Nat'l Bank,* 316 N.Y.S.2d 663, 666 (Sup.Ct.1970), *aff'd,* 37 A.D.2d 692, 323 N.Y.S.2d 408 (1971). Rather, as indicated in a prior opinion in this case, "[t]he best that can be said about the arrangements was that the two parties agreed to disagree." *Swan Brewery Co. v. United States Trust Co.,* 145 F.R.D. 40, 44 (S.D.N.Y.1992).

The cases cited by the plaintiff, and others that have come to the court's attention, are not to the contrary. In *Cassedy v. Johnstown Bank,* 246 App.Div. 337, 286 N.Y.S. 202 (1936), the court stated that "[w]hen a customer indicates that a deposit is made for a special purpose, the bank, by accepting the deposit, agrees to devote the fund to that purpose." *Cassedy v. Johnstown Bank,* 246 App.Div. 337, 339, 286 N.Y.S. 202 (1936). In that case, however, after the depositor had created the account and the bank had received explicit notice of the depositor's intention that the deposits should be held in a special account, the depository bank continued to accept deposits into the account without registering its understanding that the account was a general account. *Cassedy,* 246 App.Div. at 338–39, 286 N.Y.S. 202. This failure to register its intentions while accepting deposits was an indication that the bank agreed that the account should be a special one. In the present case, U.S. Trust imme-

diately registered its refusal to keep the Overpayment in a special account, and it was Swan that did not react to this information.

In *Lewine v. National City Bank,* 222 App.Div. 74, 225 N.Y.S. 309 (1927), *aff'd,* 248 N.Y. 365, 162 N.E. 284 (1928), the court found that a special account was created by a letter requesting that the deposit be applied by order of a named individual. This account was created, however, pursuant to the requirements of the depositor's government, and the bank had been involved in a series of similar transactions in which it had created special accounts as required. Again, therefore, there were indications that the bank had agreed to create a special account.

It is also true, as Swan claims, that if U.S. Trust had paid interest directly to Swan on the Overpayment account, rather than investing the Overpayment on Swan's behalf, this would be evidence that the Overpayment account was a general account. *See* Pl's. Reply Mem. at 10 n. 10; *Peoples Westchester Sav. Bank v. Federal Deposit Ins. Corp.,* 961 F.2d 327, 331 (2d Cir.1992). The fact that U.S. Trust does not pay interest directly to Swan, however, is not necessarily evidence, and is certainly not dispositive, of whether the Overpayment account is a special account.

Swan has failed to meet its burden of demonstrating that the Overpayment was held in a special account. The determination of whether Swan had legal ownership or immediate superior right of possession to the funds at issue, therefore, continues to depend on the basic factual issue of "whether U.S. Trust is entitled to the moneys retained by it out of the Overpayment" under § 7.07 of the Indenture Agreement. *See Swan Brewery Co. v. United States Trust Co.,* 143 F.R.D. 36, 40 (S.D.N.Y.), *on reconsideration,* 145 F.R.D. 40 (S.D.N.Y.1992). Since this factual issue has not been resolved, summary judgment is not appropriate.

Swan also asserts, on the basis of minimal textual support, that even if the Overpayment account was a general deposit, U.S. Trust could not set off the funds in the account since its claim for fees and expenses was not certain, definite, liquidated, or capa-

ble of liquidation. *See* Pl's. Reply Mem. at 13. Whether U.S. Trust's claims, if any, are certain remains in dispute, and therefore summary judgment will not be granted on these grounds.

### Conclusion

For the foregoing reasons, Swan's motion for summary judgment on its seventh cause of action for conversion is hereby denied.

It is so ordered.