The **SWAN BREWERY COMPANY LIMITED**, Plaintiff,

v.

**UNITED STATES TRUST COMPANY OF NEW YORK**, Defendant.

**No. 90 Civ. 3521 (RWS).**

United States District Court,
S.D. New York.

Dec. 2, 1992.

Andrews & Kurth, New York City, for plaintiff; Lynne M. Fischman, of counsel.

Carter, Ledyard & Milburn, New York City, for defendant; Beth D. Jacob, William H. Sloane, Peter K. Killough, of counsel.

OPINION

SWEET, District Judge.

Plaintiff The Swan Brewery Company Limited ("Swan") has moved pursuant to Local Rule 3(j) for an order granting reargument of this Court's opinion and order of July 8, 1992, and upon reargument denial of defendant the United States Trust Company of New York ("U.S. Trust")'s motion to strike plaintiff's jury demand with respect to its claims for conversion and breach of agreement to hold funds in trust. For the following reasons, the motion to reargue is granted, and upon reargument U.S. Trust's motion to strike Swan's jury demand is granted for the reasons stated below.

The parties and facts relevant to this motion have been described fully in this Court's prior opinion filed July 10, 1992 (the "July Opinion"), 143 F.R.D. 36. Familiarity with that opinion is assumed.

*The Parties*

Swan is a corporation organized under the laws of the Commonwealth of Australia with its principal place of business in Canning Vale, Western Australia. Swan is a wholly-owned subsidiary of Bond Brewing Holdings Limited ("BBH"), a corporation also organized under the laws of the Commonwealth of Australia.

U.S. Trust is a trust company organized under the laws of New York, and has served as the Indenture Trustee under two trust indentures related to the plaintiff. One, dated as of December 15, 1983 (the "Swan Indenture") is with Swan Brewery for the benefit of holders of 14⅞ limited subordinated debentures (the "Swan Debentures") in an original principal amount of U.S. $135,000,000. The other, dated as of December 1, 1986 (the "BBH Indenture") is with BBH for the benefit of the holders of 12⅝ subordinated debentures (the "BBH Debentures") in an original principal amount of U.S. $510,000,000.

*Prior Proceedings*

Swan filed its first complaint in federal court against its indenture trustee, U.S. Trust, on May 23, 1990. Swan then moved to amend its complaint on March 26, 1992, in order to add new causes of action and a demand for a jury trial. The proposed amended and supplemental complaint (the "Amended Complaint") added claims for breach of trust and fiduciary duty, breach of agreement of trust, and conversion. It also sought punitive damages for the claims of breach of trust and fiduciary duty and of conversion in addition to the new demand for a jury trial.

Swan's motion to amend and supplement the Complaint was granted on April 15, 1992, to the extent of permitting Swan to add its new causes of action, and Swan filed the Amended Complaint the next day, on April 16. U.S. Trust then moved to strike the demands for a jury and for punitive damages. The motion to strike the jury demand was granted and the motion to strike the demand for punitive damages was denied in the July Opinion. Since then, Swan has made this motion to reargue the issue of the jury demand, which is the only issue before the Court at this time.

*Facts*

The facts are not in dispute. The events which led to this case began in Australia in 1989. BBH missed the installment of interest due on its indenture payable on Decem-

ber 1, 1989, and Swan missed the installment due on its indenture payable on December 15, 1989. On December 29, 1989, the Supreme Court of Victoria, Commonwealth of Australia, appointed receivers and managers for the assets of BBH, Swan Brewery, and affiliated corporations. U.S. Trust, considering this to be an event of default under both indenture agreements, informed first BBH and then Swan that non-payment of the installments of interest within the respective 30–day grace periods specified in the indenture agreements rendered all principal and interest immediately due.

On January 12, 1990, Swan transferred to U.S. Trust the sum of U.S. $9,036,600, to cover "interest on Swan Brewery Debentures due on 15th December, 1989." On January 17, 1990, U.S. Trust received a letter from counsel for BBH which stated that BBH intended to rely on its rights as the holder of the senior debt of Swan, and which U.S. Trust construed as a claim to the January 12 interest funds. Upon receiving legal advice to the effect that serving as trustee to both indentures now posed a conflict of interest, U.S. Trust tendered its resignation as Swan Indenture Trustee. It also petitioned in New York State Court for a resolution of the conflicting claims and for an order allowing it or a majority of the holders of the Swan Debentures to appoint its successor trustee.

Before the case was heard, BBH sent a letter to U.S. Trust on January 31, 1990, stating that it made no claim to the $9,036,-600 deposited with U.S. Trust on January 12. U.S. Trust then paid the interest owed on the Swan Debentures, but informed Swan that it was deducting $903,660 as security for payment of U.S. Trust's future fees and expenses, including the reasonable compensation, disbursements and expenses of U.S. Trust's attorneys pursuant to Section 7.07 of the Swan Indenture agreement. Section 7.07 provides that:

The Company [Swan] shall reimburse the Trustee upon request for all reasonable disbursements, expenses and advances incurred or made by it. Such expenses may include the reasonable compensa-

tion, disbursements and expenses for the Trustee's agents and counsel.

However, Section 7.07 further provides that "the Company need not reimburse the Trustee for any expense or indemnify it against any loss or liability incurred by it through its negligence or bad faith."

In an unpublished opinion ("In the Matter of U.S. Trust Co.," dated February 27, 1990), the New York State Supreme Court considered U.S. Trust's petition and held the phrase "reimburse" in the Swan Indenture meant that, since U.S. Trust had made no request for reimbursement nor submitted bills prior to the commencement of the proceedings in state court, it could not help itself to an interest payment which both sides admitted was presently owed to the Swan Debenture holders. The Court also held that the language of the Indenture controlled and therefore only Swan had the right to appoint the trustee to succeed U.S. Trust.

Not surprisingly, U.S. Trust responded to the decision by demanding reimbursement and submitting bills for its legal expenses from Swan. By letter dated February 16, 1990, U.S. Trust demanded reimbursement from Swan of $141,456.75 to which it claimed it was entitled for in fees and expenses incurred as trustee under the Indenture (the "February Bill"). After U.S. Trust backed this up with a Notice of Default dated March 14, 1990, Swan paid the sum claimed in the February Bill under protest. U.S. Trust sent another statement on April 19, 1990, claiming fees and expenses in the amount of $171,680.56 (the "April Bill"), also backed up with a default notice. Swan remitted $50,000 in partial payment, again under protest and with a statement that it did not actually owe this money, and refused to pay any of the eight succeeding bills submitted by U.S. Trust throughout 1990.

On May 23, 1990, Swan filed its first Complaint in federal court, seeking an injunction against further collection efforts with respect to the April Bill, a declaratory judgment that U.S. Trust was not entitled to reimbursement of the amounts claimed in the April Bill and a declaratory judg-

ment that U.S. Trust was not entitled under the Indenture to any of the legal fees and expenses it allegedly had incurred or would incur. No timely demand for a jury trial was made in the initial complaint, nor were punitive damages were requested.

On November 28, 1990, Swan wired $130,562,906 to U.S. Trust with instructions to satisfy and discharge all of the outstanding Debentures. This sum included an alleged $969,796.62 in excess of the amount necessary to pay the Debentures in full (the "Overpayment"). By letter of the same date (the "November 28, 1990 Letter"), Swan advised U.S. Trust that the sole purpose of the transfer and deposit was to fulfill Swan's obligation to discharge the Debentures and that Swan did not thereby authorize the deduction of any amounts owing to the trustee. The November 28, 1990 Letter further stated that:

> [s]ubject to the payment of the Satisfaction Amount [calculated to be $129,683,109.38] as authorized above, the balance of the Payment Amount [the $130,652,906] is to be held in trust for Swan and invested in an interest-bearing account pending its return to Swan and is to be promptly returned to Swan, with all interest and other income earned thereon, upon demand by Swan.

> An amount in excess of that which Swan believes is the Satisfaction Amount [the Overpayment] has been provided to ensure that the Satisfaction Amount has been duly paid....

Swan Ex. K to the Amended Complaint.

By letter dated November 30, 1990, U.S. Trust notified Swan that it was paying out the principal and interest due on the Debentures, had invested the balance and was reserving the right to apply the Overpayment to its claimed fees. U.S. Trust maintains that it never accepted the Overpayment in trust for Swan, either by this letter or in any other way. By letter of December 28, 1990, U.S. Trust sent Swan an accounting of its fees and expenses that remained due in the amount of $425,805.75. By letter of August 15, 1991, Swan demanded the return of a portion of the Overpayment, stating that U.S. Trust could re-

tain $460,000 (the amount Swan estimated to be the outstanding balance of U.S. Trust's purported fees and expenses billed to Swan) in trust. Swan specified in this letter that the money returned should come entirely from the Overpayment account, not from any other accounts of Swan money which still happened to be on deposit at U.S. Trust (which existed in the amount of $143,258.92).

By letter dated September 27, 1991 (the "September 27, 1991 letter"), U.S. Trust advised Swan that it would return all but $443,391.71, which it would retain to satisfy the balance of its claimed fees and expenses, and that it would retain this money solely from the Overpayment account; the other Swan deposit of $143,258.92 was being returned with the balance of the Overpayment account. The letter also stated the "U.S. Trust recognizes that Swan disagrees with U.S. Trust's entitlement to payment for its fees and expenses." By letter dated September 30, 1991, Swan wrote U.S. Trust to the effect that U.S. Trust's retention of the $443,391.71 amounted to conversion and that Swan would seek legal intervention; however, Swan does not deny that it accepted the balance of the Overpayment when U.S. Trust wired it to Swan in early October, 1991.

*Discussion*

The Motion to Reargue

■ To be entitled to reargument under Local Rule 3(j), the moving party must demonstrate that the Court overlooked controlling decisions or material factual matters that were before the Court on the underlying motion. *Ashley Meadows Farm, Inc. v. Am. Horse Shows Ass'n,* 624 F.Supp. 856, 857 (S.D.N.Y.1985). The standard for review is strict, because the provision for reargument is not designed to allow wasteful repetition of arguments already briefed, considered, and decided. *Morgan Guaranty Trust Co. v. Garrett Corp.,* 625 F.Supp. 752, 756 (S.D.N.Y.1986).

However, in reviewing Swan's arguments then before the Court, the July Opinion stated that "because the alleged trust in this action is alleged to derive from an

agreement, it is unclear what difference is to be found between Swan's claims for breach of trust and breach of trust agreement. Lacking elucidation from Swan as to any elemental differences, these claims shall be treated together for purposes of determining the nature of these claims and the remedies sought." 143 F.R.D. at 40–41 n. 1.

Since Swan has now come before the Court with arguments demonstrating the difference between the two claims, and since the factual matters being reconsidered to decide Swan's argument come only from documents submitted as exhibits to the original motion, Swan's arguments deserve to be reexamined to determine whether they were overlooked in the prior July Opinion. For this reason, Swan's motion to reargue is granted, and the substance of Swan's contentions are considered below.

Breach of Agreement of Trust

■ Swan argues that its claims for breach of trust, breach of agreement of trust, and conversion raise new factual issues that revive its right to demand a jury trial. An amended or supplemental complaint does not, however, revive the right to demand a jury trial either as to factual issues already fully discussed in the original pleadings, *Lanza v. Drexel & Co.*, 479 F.2d 1277 (2d Cir.1973) or as to new legal theories based on facts previously pleaded, *Rosen v. Dick*, 639 F.2d 82, 94–96 (2d Cir. 1980); *cf. Royal American Mgrs., Inc. v. IRC Holding Corp.*, 885 F.2d 1011, 1018 (2d Cir.1989); *White v. McGinnis*, 903 F.2d 699, 703 n. 8 (9th Cir.) (distinguishing Rule 38 attacks on cases already tried), *cert. denied* 498 U.S. 903, 111 S.Ct. 266, 112 L.Ed.2d 223 (1990).

■ Of course, Swan would not be entitled in any event to a jury trial based on a new allegation of breach of trust. Actions by a beneficiary against a trustee based on breach of fiduciary duty, such as actions for breach of trust, were within the exclusive jurisdiction of the Chancellor and therefore such equitable claims do not entitle the claimant to a jury trial. Moreover, this issue was completely discussed in the

July Opinion, and under the circumstances there is no need to revisit it.

■ Swan urges that key facts were overlooked, facts which establish that its breach of trust and breach of agreement of trust are separate and distinct claims. Swan alleges that its November 28, 1990 Letter created a contract according to the terms in the letter by U.S. Trust's acceptance of the funds. However, under that reasoning U.S. Trust's September 27, 1991 Letter also created a contract according to *its* terms, since Swan accepted the funds that U.S. Trust wired to Swan pursuant to the letter. The best that can be said about the arrangements was that the two parties agreed to disagree. U.S. Trust says as much in the September, 1991 letter: "U.S. Trust recognizes that Swan disagrees with U.S. Trust's entitlement to payment for its fees and expenses." Since the two parties never agreed on fundamental terms, it is impossible to say a contract was formed by either letter. Swan has failed to allege a breach of agreement of trust in a manner sufficient to vacate its waiver of a jury trial.

■ Therefore, Swan has not alleged a new legal claim which would revive its right to a jury trial. This goes only to the nature of the right, however, not the remedy. As this Court stated in the July Opinion, to determine whether a claim is legal or equitable, courts look first to the nature of the issues involved (by comparing the action to traditional equity actions under English law), and then to the nature of the remedy sought. Here, Swan argues that this Court has already determined that Swan's action is legal, not equitable. Swan bases this argument on the Court's denial of a temporary restraining order and preliminary injunction in October, 1991, on the ground that money damages were available to redress Swan's injury.

This Court's denial of Swan's request for a TRO or preliminary injunction under the circumstances is not to the contrary of either the July Opinion or this opinion. Since Swan's claims were for money only, Swan was not at that point entitled to the

drastic remedy of an injunction. A "preliminary remedy is an extraordinary remedy that should not be granted as a routine manner," *JSG Trading Corp. v. Tray–Wrap, Inc.*, 917 F.2d 75, 80 (2d Cir.1990) (preliminary injunction to segregate assets disputed in conversion claim into separate trust account not appropriate remedy). The decision not to grant a preliminary injunction at the time has no effect on the underlying nature of the action.

■ Swan also contends the Court overlooked the facts giving rise to its conversion claim, which independently revives its right to demand a jury trial. As this Court stated in the July Opinion, to prove conversion Swan must show (1) that it had legal ownership or immediate superior right of possession to the funds at issue and (2) that it made a demand for the return of the funds which was refused. Since U.S. Trust's defense is that it was lawfully owed this money under the Swan Indenture, Swan alleges that legal precedent (which indicates that self-help is not a defense to conversion) allows it to state an independent factual claim for conversion. However, this fails to raise a new factual issue. Swan's additional claim raises only a new legal issue, which by itself cannot revive a plaintiff's right to a jury trial. *Lanza*, 479 F.2d at 1311; *Bulk Oil (U.S.A.) Inc., v. Sun Oil Trading Co.*, 584 F.Supp. 36, 43 (S.D.N.Y.1983). (" 'Issues' for the purpose of Rule 38, are issues of fact, not legal theories.") A charge of conversion requires the parties to prove different elements than a fee dispute; but here this does not change the facts underlying the complaint.

Swan notes that U.S. Trust now possesses money paid to it as part of the "Overpayment", which did not exist at the time of the original complaint. However, at the time of the complaint, Swan had paid over to U.S. Trust at least $141,456.75 (the February bill) "in protest" and which explained that the money was to be held in trust for Swan—essentially what it claims now. More importantly, Rule 38 of the Federal Rules of Civil Procedure states that a waiver of a jury trial is effective as to all issues

relating the "general area of the dispute." Regardless of whether Swan is claiming that U.S. Trust's behavior amounts to conversion, extortion, or an improper set-off of fees not covered by the Indenture Agreement, the general area of the dispute is still about which of the parties is entitled to the money. Swan's claim of conversion continues to relate to the fundamental question about whether U.S. Trust is entitled to the money or not; clearly, if U.S. Trust is so entitled, there was no conversion. Therefore, the basic factual issue thus posed by this claim is still whether U.S. Trust is entitled to the moneys retained by it out of the Overpayment, as this Court stated earlier in the July Opinion.

*Conclusion*

Because Swan's motion for reargument required the Court to examine materials and controlling decisions set before the Court but not considered by it in the July Opinion, Swan's motion for reargument is granted. Upon reconsideration, Swan's argument for a jury trial is again denied for the reasons set forth above.

It is so ordered.