Ralph R. NOBILE, as the Executor of the Estate of Annette Pace and Peter Gerardi, Plaintiffs,

v.

PENSION COMMITTEE OF the PENSION PLAN FOR EMPLOYEES OF NEW ROCHELLE HOSPITAL and the New Rochelle Hospital Medical Center, Defendants.

No. 84 Civ. 4139 (WK).

United States District Court, S.D. New York.

June 17, 1985.

Wolf, Haldenstein, Adler, Freeman & Herz by Mark M. Rottenberg, New York City, for plaintiffs.

Burrows & Poster by Kenneth David Burrows, New York City, for defendants.

WHITMAN KNAPP, District Judge.

This action is brought by Ralph Nobile as Executor of the Estate of Annette Pace (the "decedent") and by Peter Gerardi, the son and designated beneficiary of an interest in the decedent's pension plan. Defendants in the action are the Pension Committee of decedent's pension plan and the New Rochelle Hospital and Medical Center, decedent's former employer. The case is now before us on defendants' motion to strike plaintiffs' jury demand. For the reasons which follow we grant the motion.

Plaintiffs' complaint alleges various statutory and common law claims for relief which arise from a single and largely undisputed set of facts. The decedent was a participant in a pension plan (the "Plan") for employees of defendant New Rochelle Hospital and Medical Center. As a vested plan participant she was entitled, on retirement, to certain income. Unless a plan participant elected an option, the retirement income was payable in the form of a Retirement Pension (single life annuity) under which no death benefits were available. A participant could, however, pursuant to § 12.3 of the Plan, elect a Life Pension With Ten-Year Certain Option (the "Option"). Under the Option, an actuarially reduced pension is paid to the participant for life with the provision that if the participant dies before 120 monthly payments have been made, the reduced monthly pension payments are continued to the participant's designated beneficiary until all 120 payments have been completed. Under the current Plan, which became effective in

1981, the election of the Option is valid only [1] if the participant continues to live for 180 days after the date on which the election is filed with the Pension Committee. Under the prior 1975 plan, the Option was valid only if the participant elected at least 2 years before the Normal Retirement Age,[2] or submitted proof of good health.

On January 6, 1982, the decedent became aware that she was suffering from terminal cancer. In early February she was admitted to the hospital at which she was employed and underwent surgery, followed by chemotherapy and radiation treatments which lasted through January of 1983.

Plaintiffs allege that in late July, 1982, some four months after her operation, the Benefits Manager at the Hospital undertook to counsel decedent regarding her Plan benefits. Although defendants deny plaintiffs' characterization of the meeting, they concede that a meeting took place between the Benefits Manager and decedent, and that the Benefits Manager did not inform decedent that on retirement she could choose between a monthly lifetime annuity or the Ten-Year Certain Option, nor that if she elected the Option it would be valid only if she lived for 180 days after such election. Decedent did not make an election at that time and continued working until her retirement on January 1, 1983.

Sometime in early January, 1983 decedent again met with the Benefits Manager. On January 13 she elected the Option and designated her son Peter Gerardi as her beneficiary. Thirty-nine days later she died.

After decedent died, defendants advised her son that they considered decedent's Option election null and void because she had died before the 180th day of the waiting period prescribed by the Plan. After exhausting the claim procedures enunciated by the Plan itself, plaintiffs filed the instant action in which they allege five claims: The first two claims, brought under ERISA, 29 U.S.C. § 1001 *et seq.*, allege that both defendants, the Pension Committee of the Pension Plan for Employees of the New Rochelle Hospital (the "Pension Committee") and the New Rochelle Hospital and Medical Center (the "Hospital"), breached their duty of disclosure by not furnishing to the decedent a copy of the 1981 Plan Summary (29 U.S.C. §§ 1021, 1022, 1024(b) ), and their fiduciary duty, pursuant to 29 U.S.C. § 1104, by failing to provide the decedent with the information necessary to make a reasoned decision regarding benefits. The third and fourth claims, brought only against the defendant Hospital, allege a common law breach of fiduciary duty and a breach of the common law of trusts. The fifth claim, against both defendants, alleges an arbitrary and capricious denial of benefits. For relief, plaintiffs request the 120 monthly payments (less any monies already received), with interest and punitive damages.

### DISCUSSION

Whether plaintiff is entitled to a jury under ERISA, 29 U.S.C. § 1001 *et seq.*, is not at all clear. We considered, but did not decide, the question in *Sixty-Five Security Plan v. Blue Cross and Blue Shield* (S.D. N.Y.1984) 583 F.Supp. 380, 389. We there indicated by *dictum* that a plaintiff in an ERISA enforcement action might be so entitled. We relied on the reasoning in *Pollock v. Castrovinci* (S.D.N.Y.1979) 476 F.Supp. 606. That case, although affirmed without opinion, 622 F.2d 575, has since been strongly questioned by the Court of Appeals. *See Katsaros v. Cody* (2d Cir. 1984) 744 F.2d 270, 278–79, *cert. denied,* —— U.S. ——, 105 S.Ct. 565, 83 L.Ed.2d 506. Several circuits have already confronted the issue and have definitively ruled that ERISA provides no right to a jury. *In Re Vorpahl* (8th Cir.1982) 695 F.2d 318, 320–22; *Calamia v. Spivey* (5th

---

**1.** The validity of the election is subject to certain other exceptions not relevant to this case.

**2.** The decedent attained normal retirement age on July 1, 1982.

Cir.1980) 632 F.2d 1235, 1237; *Wardle v. Central States, Southeast & Southwest Areas Pension Fund* (7th Cir.1980) 627 F.2d 820, 829–30, *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1941). *See also Rubin v. Decision Concepts, Inc.* (S.D.N.Y.1983) 566 F.Supp. 1057; Note, "The Right to Jury Trials in Enforcement Actions under Section 502(a)(1)(B) of ERISA," 96 Harv.L.Rev. 737, 738 (1983). On reconsidering the question we find the reasoning of these latter authorities persuasive. As the court in *Wardle,* after analyzing the legislative history of ERISA stated (627 F.2d at 829):

> We conclude that Congress' silence on the jury right issue reflects an intention that suit for pension benefits by disappointed applicants are equitable. Such suits under the law of trusts have existed for quite a while in state courts and have been entertained in federal courts under their diversity jurisdiction. These suits have been considered equitable in character. This conclusion has been based primarily on the law of trusts, which provides a beneficiary with a legal remedy only with respect to money the trustee is under a duty to pay unconditionally and immediately to the beneficiary. Restatement (Second) of Trusts §§ 197–198 (1959). Thus the most reasonable interpretation is that Congress intended to provide general federal jurisdiction over equitable suits that had traditionally been brought in the state courts. (Footnotes and citations omitted.)

We therefore conclude that plaintiff is not entitled to a jury on the ERISA claims alleged in the first two counts of her complaint.

We now turn to whether plaintiffs are entitled to a jury on their state law claims—claims of breach of fiduciary duty, breach of the common law of trusts, and arbitrary denial of benefits. To make such a determination we must examine the nature of the claims and the relief sought. *See Ross v. Bernhard* (1970) 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729. A claim entitles a litigant to a jury trial only if it "involves rights and remedies of the sort traditionally enforced in an action at law, rather than in an action in equity or admiralty." *Pernell v. Southall Realty* (1974) 416 U.S. 363, 375, 94 S.Ct. 1723, 1729, 40 L.Ed.2d 198.

At the outset we note that the reasoning quoted from the *Wardle, supra* —denying a jury in an ERISA enforcement action because juries are not available in actions asserting comparable state claims— would seem to indicate a similar result for the state claims here involved.[3] There exist, however, several cases—not controlling upon us—that seem to suggest an opposite result. *Jefferson National Bank v. Central National Bank of Chicago* (7th Cir. 1983) 700 F.2d 1143; *Dixon v. Northwestern National Bank* (D.Minn.1969) 297 F.Supp. 485. Those cases proceed on the assumption that a jury should be afforded where the sole *remedy* sought by the plaintiff is the payment of money, regardless of whether or not equitable considerations give rise to the defendant's duty to make such payment.[4] In coming to this conclusion they cite § 198(1) of the Restatement

---

**3.** *See, e.g., In re Gartenberg* (2d Cir.1980) 636 F.2d 16, 18, *cert. denied,* 451 U.S. 910, 101 S.Ct. 1979, 68 L.Ed.2d 298 ("The issue in this case involves the equitable inquiry whether the Trust adviser violated its fiduciary obligations by charging an exhorbitant fee."); *In re Nelson's Will* (Sur.Ct. West.Co. 1980), 105 Misc.2d 747, 433 N.Y.S.2d 314, 318 ("[B]ecause a fiduciary obligation is involved in the dispute between the parties, that ... proceeding is cognizable in equity").

**4.** Although the remedy requested in the complaint is to "award plaintiff 120 monthly payments of $252.40 from January 1, 1983 with interest from each of the dates on which each of the payments should have been made (less any monies already received)," we acknowledge that plaintiff could easily amend the complaint to ask for the present value of the sum allegedly due over the next eight years.

(Second) of Trusts (1959) which provides in pertinent part:

(1) If the trustee is under a duty to pay money immediately and unconditionally to the beneficiary, the beneficiary can maintain an action at law against the trustee to enforce payment.

We believe that those cases misread the cited Restatement section, and that their conclusion is unsound. It seems to us that the word "unconditionally" in the above quoted text was intended to mean without the intervention of equity.[5] This interpretation is borne out by the five illustrations which follow the text.[6] Each of the illustrations presents a situation in which there is no possible need for the intervention of equity, the only question being whether the trustee failed to perform a ministerial act expressly mandated by the trust instrument. The court's function in such a case is no different from that performed in the interpretation of a contract, or any other document. The instant case, on the other hand, presents the traditionally equitable question of whether or not the alleged "common law trustee" breached its fiduciary duty. Unless and until that equitable question is resolved in plaintiffs' favor, the alleged trustee is under no duty to make any payment whatsoever. We therefore find that plaintiff's common law claims are not such as would entitle them to bring an action at law which would be triable before a jury.

■ Plaintiffs' final claim—arbitrary and capricious denial of benefits—does no more than restate a traditional standard of judicial review of fiduciaries' determinations. *See Rehmar v. Smith* (9th Cir.1976) 555 F.2d 1362, 1371. The application of such standard has traditionally been done by judges rather than juries. *See Wardle, supra,* 627 F.2d at 830. Plaintiffs have suggested no alternate interpretation and, in fact, have not even addressed the question of whether the final claim separately entitles them to a jury. We find that it does not.

In summary, defendants' motion to strike plaintiffs' jury demand is granted.

SO ORDERED.

---

5. Inexplicably, the word "unconditionally" does not appear in that part of the *Jefferson Bank* opinion which quotes the text of § 198. 700 F.2d at 1149.

6. The illustrations listed following the text and comments of § 198 are:

**Illustrations**

1. A pays $1000 to B in trust to invest the money and to pay the principal and accrued income to C when C reaches the age of twenty-one. When C reaches the age of twenty-one, B has on hand $1500 including the principal and accrued income. C can recover against B in an action of debt or general assumpsit or in an action at law in States where the forms of action have been abolished.

2. A transfers shares of stock to B in trust to pay the income to C on the first of January and on the first of July. B receives dividends in March and fails to pay them to C on the first of July. B is liable to C in an action of debt or general assumpsit or in an action at law in States where the forms of action have been abolished.

3. A transfers shares of stock to B in trust to pay the dividends accruing thereon to C. A dividend is received by B and B misappropriates it. B is liable to C in an action of debt or general assumpsit or in an action at law in States where the forms of action have been abolished.

4. A transfers a farm to B in trust to manage the farm and to pay the net income to C. B makes various expenditures and receives various sums of money and states an account showing that there is a net income due to C of $1000. B is liable to C in an action of debt or general assumpsit or in an action at law in States where the forms of action have been abolished.