**Petitioner:  Ronald A. PETERSON**

v.

**Respondent:  Jane F. McMAHON, In her capacity as Successor Trustee of the Edward Sklar Supplemental Care Trust.**

No. 03SC685.

Supreme Court of Colorado,
En Banc.

Oct. 18, 2004.

Ronald A. Peterson, Pro Se, Rothgerber, Johnson & Lyons, Edward A. Gleason, Colorado Springs, for Respondents.

MULLARKEY, Chief Justice.

## I. Introduction

Ronald A. Peterson, an attorney, challenges the judgment of the court of appeals awarding exemplary damages against him under section 13–21–102(1)(a), C.R.S. (2004), for willful and wanton conduct while acting

as trustee of a supplemental care trust. Respondent, Jane F. McMahon, in her capacity as successor trustee of the trust sued Peterson for breach of fiduciary duty and negligence based on improper loans made from the trust corpus and failure to file required annual accountings with the court. The probate court ruled in favor of McMahon and awarded compensatory and exemplary damages. In an unpublished opinion, the court of appeals upheld the district court in relevant part. Peterson appeals the award of exemplary damages alleging that the action was in equity and thus exemplary damages are not available. *McMahon v. Peterson*, No.02CA0984, 2003 WL 21715614 (Colo.App. July 24, 2003) (not selected for official publication).

We hold that a suit brought by a successor trustee against a former trustee to recover trust funds misappropriated by the former trustee can be maintained at law. Although actions by beneficiaries against existing trustees are generally considered equitable, they are not exclusively so. When a trustee is under a duty to pay money immediately and unconditionally, the action to recover that money is legal. A former trustee is under an immediate and unconditional duty to pay money misappropriated from the trust to the successor trustee appointed after his or her removal.

Exemplary damages may only be awarded by statute in Colorado, and the relevant statute provides that exemplary damages are only available in actions maintained at law. Because the action here was brought by a successor trustee against a former trustee, it is an action maintained at law. Therefore, exemplary damages may be awarded and we uphold the court of appeals' judgment affirming the probate court's order awarding exemplary damages against the defendant.

## II. Facts and Prior Proceedings

The Edward Sklar Supplemental Care Trust was created in 1991 to manage the assets of Edward Sklar, who had been adjudged to be an incapacitated person following a head injury. The trust was funded by a settlement obtained by Patric LeHouillier, an attorney, for personal injury and medical malpractice claims arising out of the events leading to the injury. Peterson, a fellow attorney and close friend of LeHouillier, was appointed trustee.

During his tenure as trustee, Peterson made numerous loans from the trust corpus to LeHouillier on terms very favorable to his friend.[1] Despite the fact that LeHouillier had recently filed for bankruptcy, some of the loans were unsecured and all had interest rates much lower than what should have been charged according to the risk LeHouillier presented. The LeHouillier loan notes were not collected in accordance with their terms. Some of the notes went without any payment for approximately five years. No default interest was charged on the unpaid notes.

Peterson also made loans to LeHouillier's clients. One of the loans went bad, but Peterson repaid the money from his own funds with interest. Sklar died in 1995. Under the terms of the trust, the trust assets were to be distributed to Sklar's heirs upon his death. Peterson not only failed to make the required distributions, but also continued to make loans totaling approximately $40,000 to LeHouillier after Sklar's death. Throughout the entire time he acted as trustee, Peterson failed to file any of the annual accountings required by the terms of the trust agreement with the probate court.

Three years after Sklar's death, a magistrate for the El Paso County District Court contacted Peterson to inquire about the loans and lack of accountings as part of a review of trusts under the court's jurisdiction. Subsequently, Peterson withdrew as trustee and the court appointed McMahon as successor trustee. In her capacity as trustee, McMahon sued Peterson for breach of fiduciary duty and negligence.[2]

1. The total amount of loans to LeHouillier equaled $116,000, representing over half of the initial trust corpus.

2. In the same action, McMahon also filed suit against LeHouillier. The suits were subsequently split and a judgment was recovered against LeHouillier that will offset the damage award against Peterson.

After a bench trial, the probate court held Peterson liable for gross negligence in managing the trust based on his failure to file accountings, failure to act in the beneficiary's interest by making improper loans to friends and failure to invest trust assets prudently. Compensatory damages of $316,631.53 were awarded based on what the trust would have earned had Peterson not violated his duties as trustee. The probate court further found that Peterson's actions were "willful and wanton, done heedlessly and recklessly, without regard to the consequences, or of the rights and safety of others" and concluded that an award of $100,000 in exemplary damages was warranted. Although noting that exemplary damages are not available in equity actions, the court determined that this case had been tried in tort and thus exemplary damages could be awarded.

Peterson appealed the award of exemplary damages, alleging that our decision in *Kaitz v. Dist. Court*, 650 P.2d 553 (Colo.1982), precluded an award of exemplary damages in an action against a former trustee because such actions are equitable. The court of appeals upheld the exemplary damage award, observing that the *Kaitz* court held that an action by a beneficiary against a trustee was generally, but not always, an equitable action. *Peterson*, slip op. at 8 (citing *Kaitz*, 650 P.2d at 555). A later supreme court decision, the court of appeals noted, stated that *Kaitz* did not "foreclose the real possibility that fiduciary duty claims could be tried at law" and thus the probate court did not err in awarding damages. *Peterson*, slip op. at 8 (citing *Paine, Webber, Jackson & Curtis, Inc. v. Adams*, 718 P.2d 508, 514, n. 5 (Colo.1986)).

Peterson then appealed the exemplary damage award to this court, contending the court of appeals misapplied *Kaitz* in upholding the award of exemplary damages. We granted certiorari to review the award.[3]

### III. Analysis
#### A.

█ Exemplary damages may only be awarded pursuant to statute in Colorado.

*Corbetta v. Albertson's, Inc.*, 975 P.2d 718, 721 (Colo.1999); *Ark Valley Alfalfa Mills, Inc. v. Day*, 128 Colo. 436, 440, 263 P.2d 815, 817 (1953). The statute authorizing exemplary damages provides a jury may make an award of exemplary damages for "a wrong done to the person or to personal or real property" when the injury is accompanied by fraud, malice, or willful and wanton conduct. § 13–21–102(1)(a), C.R.S. (2004). Despite use of the word "jury," this statute has been interpreted to allow exemplary damages to be awarded in cases tried to the court as well. *Sky Fun 1 v. Schuttloffel*, 27 P.3d 361, 370 (Colo.2001).

Regardless of who serves as factfinder, our interpretation of this statute has also firmly established that exemplary damages are only recoverable in actions at law and not in actions at equity. *See Kaitz*, 650 P.2d at 556; *Miller v. Kaiser*, 164 Colo. 206, 215, 433 P.2d 772, 776–77 (1967); *Littlejohn v. Grand Int'l Brotherhood of Locomotive Eng'rs*, 92 Colo. 275, 20 P.2d 311 (1933). Thus, in order for the exemplary damage award in the present case to stand, the action against Peterson must be fairly characterized as maintained at law.

█ Two methods are frequently employed to determine whether an action is legal or equitable. *See* 1 Dan B. Dobbs, *Dobbs Law of Remedies: Damages–Equity–Restitution* § 2.6(3) (2d ed.1993). First, courts examine the nature of the remedy sought. *Id.; Cont'l Title Co. v. Dist. Ct.*, 645 P.2d 1310, 1316–18 (Colo.1982). Actions seeking monetary damages are considered legal while actions seeking to invoke the coercive power of the court, such as those seeking injunctions or specific performance, are deemed equitable. Dobbs, *supra*, § 2.6(3). *See Cont'l Title*, 645 P.2d at 1316–18. Second, courts look to the historical nature of the right that a plaintiff is seeking to enforce. *See Kaitz*, 650 P.2d at 555; Dobbs, *supra*, § 2.6(3). A claim is equitable when the plaintiff is seeking to enforce a right originally created in or decided by equi-

---

**3.** We granted certiorari on the issue: Whether or not the court of appeals holding that allows punitive damages against a trustee for not guaranteeing a twenty percent return on investment is contrary to decisions of this court or existing law holding that actions in equity are not subject to punitive damages.

ty courts. *See Kaitz,* 650 P.2d at 555; Dobbs, *supra,* § 2.6(3).

■ McMahon, the plaintiff in the present case, seeks exclusively money damages, and thus the nature of the remedy is legal. Although we have generally preferred using the remedial method in deciding whether a claim is legal or equitable, the overwhelmingly equitable history of trusts makes trust litigation a special case. *See Cont'l Title,* 645 P.2d at 1316 (In deciding whether a case is legal or equitable for purposes of a jury trial "the determinative issue is the characterization of the nature of the relief sought."); Dobbs, *supra,* § 2.3(2) (tracing the development of the concept of trusts and trust law in English courts of equity). Because equity courts developed the concept of a trust and equitable principles such as the requirements of "good conscience" are used to enforce trusts and the fiduciary duties underlying trusts, litigation relating to trusts has been treated as equitable even when solely monetary relief is sought. *See Kaitz,* 650 P.2d at 555 (action against trustee held equitable even though money damages sought as relief); Dobbs, *supra,* § 2.6(3)("Trust and fiduciary cases are historically and substantively equitable, but remedially speaking they might be legal.").

We recognized the historically equitable nature of trust actions in *Kaitz,* when we held that actions by a beneficiary against a trustee in an existing trust were "generally, but not always" equitable. 650 P.2d at 555. Contrary to Peterson's contention and the basis of his appeal, we did not hold that actions against a trustee were exclusively equitable. *Id.* In fact, we expressly stated that "in certain situations, a beneficiary may maintain an action at law against a trustee." *Id.* The availability of an action at law in the trust setting was reiterated in *Paine, Webber,* 718 P.2d at 514 n. 5. There, we noted that "*Kaitz* does not foreclose the real possibility that certain fiduciary duty claims can be tried at law." *Id.*

The Restatement (Second) of Trusts recognizes two instances where a trust action may be maintained at law. § 198 (1959). One of these instances is where "the trustee is under a duty to pay money immediately and

unconditionally to the beneficiary." *Id.,* § 198(1); *see also,* 13 George T. Bogert, *Trusts & Trustees,* § 870 (2d ed. rev.1995); 3 William F. Fratcher, *Scott on Trusts,* § 198.1 (4th ed.1987). Comment d of this subsection provides an illustration of when there is an immediate and unconditional duty to repay a sum of money. It reads:

> If the trustee misappropriates money which it is his duty to continue to hold in trust, the beneficiary, not being entitled to immediate payment, cannot maintain an action at law against the trustee. His remedy is a suit in equity to compel the trustee to restore the money misappropriated and to hold it in trust or pay it to a new trustee. *If, however, the trustee is first removed and a new trustee is appointed, the new trustee may maintain an action at law against him to recover the amount misappropriated, since he is under a duty to pay the money immediately and unconditionally to the new trustee.*

(emphasis added).

This is precisely the situation we encounter in the present case. "Misappropriate" is not defined in the Restatement. A common dictionary definition is "to put to a wrong use, to apply wrongfully or dishonestly, as funds entrusted to one's care." *Webster's Encyclopedic Unabridged Dictionary* 1228 (Deluxe ed.2001). Peterson's conduct meets the definition. Here, Peterson wrongfully or dishonestly loaned money Sklar entrusted to his care to his friend LeHouillier and LeHouillier's clients, resulting in a loss to the trust. McMahon is suing to recover the amount lost by the misappropriation. Because McMahon is the successor trustee, Peterson, as former trustee, is under an immediate and unconditional duty to pay the trust funds to her. Thus, the action to recover those funds may be maintained at law.

Unlike the suit in *Kaitz* where the beneficiaries of an existing trust were suing an existing trustee, here the successor trustee appointed after the former trustee's removal is suing that former trustee. As the Restatement comment illustrates, the relationship between the parties creates an immediate and unconditional duty to payment and

makes the action one that can be maintained at law.

In an analogous situation, the Seventh Circuit declared an action by the personal representative of a deceased beneficiary's estate against the former trustee for breach of fiduciary duty to be legal rather than equitable. *Jefferson Nat'l Bank of Miami Beach v. Central Nat'l Bank in Chicago,* 700 F.2d 1143 (7th Cir.1983). Central National Bank in Chicago (Central Bank) was the trustee of an *inter vivos* trust funded primarily by a promissory note owed to the settlor who was the sole beneficiary of the trust. The maker of the note was a corporation that was also a loan customer of Central Bank. Central Bank failed to secure or collect payment of the note in violation of its fiduciary duty as trustee, even though it took care to secure its own loans to the corporation. When the corporation subsequently went bankrupt, the note became worthless. The settlor revoked the trust and ordered its assets transferred to Jefferson National Bank of Miami Beach (Jefferson Bank). Two years after the settlor's death, Jefferson Bank sued Central Bank for breach of fiduciary duty as trustee. The alleged breach was based not on poor investment results, but on the damage to the trust resulting from Central Bank's improper dual relationship with the bankrupt corporation that made the promissory note. Central Bank protected its own financial interests and failed to protect the trust's assets.

Similarly, in the present case, Edward Sklar, the settlor and sole beneficiary of the trust, died in 1995. The terms of the trust mandated that, upon his death, Peterson distribute the trust assets to Sklar's heirs. These distributions were never made. Three years after Sklar's death, a new trustee was appointed who subsequently sued Peterson to recover the trust assets owed to Sklar's heirs. Because of Peterson's relationship with LeHouillier, he failed to secure and charge the proper interest according to the risk on the loans made from the trust. Like Central Bank, Peterson protected his own interest by giving favorable loans to LeHouillier at the expense of the trust's assets.

Relying on comment d, the Seventh Circuit characterized Jefferson Bank's suit as one for immediate payment to the beneficiary's estate on an indebtedness arising out of Central Bank's breach while managing the trust. *Id.* at 1149. The court concluded that the case was the kind of legal action contemplated by Restatement section 198. *Id.* at 1150. Because of its conflict of interest, Central Bank failed to preserve the trust assets and it was thus indebted to the new trustee for that amount. *Id.* at 1149. The Seventh Circuit also noted that "Central is presently and unconditionally obligated to pay the Personal Representative [Jefferson Bank] a determinable sum of money to which the beneficiaries under the will of [the settlor] are immediately entitled." *Id.* at 1150.

The same results apply in this case. Peterson is obligated to pay McMahon a determinable sum of money to which Sklar's heirs, under the terms of the trust, are immediately entitled. The Seventh Circuit also found it significant that the case did not require the trial court to exercise any of its equitable powers such as requiring an accounting, enjoining future action or maintaining jurisdiction to supervise the future administration of the trust. *Id.* Rather the trial court merely ordered immediate payment of money damages to the beneficiary's estate. *Id.* Similarly, in the present case, McMahon does not ask for an accounting or continuing jurisdiction, but merely seeks an order that Peterson pay her the trust funds missing as a result of his breach.

■ The suit against Peterson is an action of a successor trustee against a former trustee for misappropriation of trust funds. In this type of suit, the former trustee is under a duty to pay money immediately and unconditionally to the new trustee. Thus, the action is legal in nature and exemplary damages can properly by awarded pursuant to section 13–21–102(1)(a).

### B.

■ Peterson also asserts that the award of exemplary damages was improper because the probate court required him to guarantee a twenty percent return on trust investments and this is an impossible standard to meet. We agree with the court of appeals that Peterson's objection is not a fair reading of the probate court's order. *Peterson,* slip op. at 6. Rather, the probate court found that Peterson's conduct as trustee fell so far below that which was required of him by the Uniform Prudent Investment Act, § 15–1.1–101 to –115, C.R.S. (2004), as to amount to

gross negligence.[4] The court's finding that Peterson's actions were willful and wanton, necessary for the award of exemplary damages, was based on imprudent investments, improper loans to friends and failure to file accountings, not a failure to achieve a specified return. The concept of a twenty percent return on investments was introduced not to determine liability but to provide a measure of compensatory damages by comparing what the trust should have earned to what it did earn.

■ An award of damages in a bench trial will not be set aside on appeal unless the award is an abuse of discretion. *See Ballow v. PHICO Ins. Co.*, 878 P.2d 672, 677 (Colo. 1994). We cannot find the probate court abused its discretion here.

## IV. Conclusion

A suit brought by a successor trustee against a former trustee for breach of fiduciary duty and negligence can be maintained at law. We therefore uphold the court of appeals' judgment and the probate court's award of exemplary damages.

Justice COATS dissents.

Justice COATS dissenting.

Whether or not Peterson breached his duty to prudently invest the funds entrusted to him, I do not believe this award of punitive damages is permitted by the statutes of this jurisdiction. In what I consider to be a mistaken reading of a comment to a restatement of the law of trusts,[1] the majority finds an exception to the proposition that trust litigation was historically equitable in nature, thereby permitting a jury trial and punitive damages under the circumstances of this case. Because I believe that the majority's articulation of the distinction between an action formerly at law and an action formerly in equity is not historically accurate and will unjustifiably expand the right to jury trials and punitive damages, I respectfully dissent.

Punitive, or exemplary, damages have long been governed by statute in this jurisdiction. *See* § 13–21–102(1)(a), 5 C.R.S. (2003). Although the pertinent statute, on its face, permits only a jury to award exemplary damages, this court has long held, without legislative reaction, that the legislative intent in using this term was merely to limit such awards to cases that are triable to a jury, whether or not a jury actually serves as the trier of fact in a particular case. *See Calvat v. Franklin*, 90 Colo. 444, 449–50, 9 P.2d 1061, 1063–64 (1932); *see also Sky Fun 1 v. Schuttloffel*, 27 P.3d 361, 370 (2001). Because there is no constitutional right to a civil jury trial in this jurisdiction, *see Garhart v. Columbia/HealthONE, L.L.C.*, 02SA182, slip op. at 20–22 (August 16, 2004), and because no statute or rule of civil procedure enlarges the right to a jury trial that existed at law, *see Miller v. District Court*, 154 Colo. 125, 128, 388 P.2d 763, 765 (1964); C.R.C.P. 38, the former distinction between actions at law and actions in equity survives for determining the right to a jury trial and, therefore, to an award of exemplary damages. *See Kaitz v. District Court*, 650 P.2d 553, 555 n. 3 (Colo.1982).

While the nature of the available remedies may be a strong indicator of the legal or equitable nature of an action, *see Continental Title Co. v. District Court*, 645 P.2d 1310, 1317 (Colo.1982), the fact that a plaintiff seeks a money judgment has by no means been considered decisive that the action is one at law. *See id.* ("We conclude, however, that such back pay is an integral part of the equitable remedy provided by the statute and was not intended to create a legal remedy invoking the right to a jury trial."); *Cree v. Lewis*, 49 Colo. 186, 112 P. 326 (1910). Rather than constituting a special case or an exception to a rule based on recovery of money judgments, however, trust litigation merely demonstrates that money judgments sometimes result from actions that developed in equity, like actions at law.

---

**4.** Peterson contends in his opening brief that an Attorney Regulation Hearing Board that reviewed his handling of the Sklar Trust found his conduct to be "exemplary," and that the discrepancy between the Hearing Board's finding and the probate court's finding provides another reason why the punitive damage award is unwarranted. Peterson misstates the Board's finding. In fact, although the Board elected not to discipline Peterson for his conduct in the Sklar matter, it stated his handling of the Sklar Trust was "far from exemplary." *People v. Peterson*, No. 01PDJ066, slip op. at 22 (November 24, 2003). Peterson was publicly censured in the same proceeding for his handling of another trust. The Hearing Board's decision is not before us and we pass no opinion on its merits.

**1.** *See* Restatement (Second) of Trusts § 198 cmt. d (1959).

While we clearly acknowledged · in *Kaitz* that actions at law could arise from the circumstances of a trust or from certain actions of a trustee, we also made clear that actions against a trustee for breach of trust are equitable in nature. Because there was no "allegation of any breach of any express duty to pay a sum certain" in that case, we held that the plaintiffs were not entitled to an action at law. *Kaitz,* 650 P.2d at 555. Relying heavily on what I consider to be its misreading of Comment d to section 198(1) of the Restatement, the majority distinguishes *Kaitz* as involving a suit by the beneficiaries rather than a successor trustee and holds that "the relationship between the parties ... makes the action one that can be maintained at law." Maj. op. at 598–99. In *Kaitz,* however, we held that the plaintiffs could not bring an action at law, not because they were beneficiaries, but because, as is the case here, they were seeking relief for the breach of a fiduciary duty. *Kaitz,* 650 P.2d at 555.

The example in Comment d does not turn on a plaintiff's status as a successor trustee but rather on the nature of his action to recover misappropriated trust monies. The Comment merely recognizes that if a trustee is under a duty to pay money "immediately and unconditionally," an action at law may be maintained against him "to recover the amount misappropriated," whether the party to whom the duty is owed is a new trustee or a beneficiary, or someone else altogether. *See Nobile v. Pension Comm.,* 611 F.Supp. 725, 729 (S.D.N.Y.1985). By postulating "a new trustee," the example merely presents a realistic situation in which such an immediate and unconditional duty could exist.

While the Comment's reference to "misappropriated" money also appears to be illustrative rather than definitive, it is indicative of the money that could be the subject of a duty of immediate and unconditional payment. As the illustrations which follow the text demonstrate, it contemplates merely an action based on the failure of the trustee to perform a ministerial act expressly mandated by the trust instrument, not a breach of his trust by failing to increase the trust funds through prudent investment. *Id.* Whether or not it would constitute misappropriation, even the Seventh Circuit, upon which the majority relies for support of its interpretation of Comment d, affirmed the right to a jury trial only where the former trustee actually lost money entrusted to him through poor investments and, therefore, was unable to turn over the previously existing trust funds to the new trustee. *See Jefferson Nat'l Bank of Miami Beach v. Central Nat'l Bank in Chicago,* 700 F.2d 1143 (7th Cir. 1983).

Punitive damages were awarded against Peterson, not for lost trust funds, which did not exceed $15,000 in this case,[2] but for monies he failed to generate by prudent investing. Neither the Restatement, nor any other authority of which I am aware, suggests that a trustee has a duty to "immediately and unconditionally" pay money that is not and never has been part of the trust to a new trustee, merely because he should have invested more prudently. Whether brought by a new trustee or someone else, a claim for breach of trust by failing to invest prudently is equitable in nature and may not be tried to a jury.

Because I believe the majority's mechanical distinction between suits brought by beneficiaries and those brought by new trustees is unsupportable and will simply amount to a prescription for punitive damage awards against trustees who fail to meet the standards required of prudent investors, I respectfully dissent.

---

**2.** *See* § 13–21–102(1)(a) (limiting exemplary damages to "an amount which is equal to the amount of the actual damages awarded to the injured party").